# Palmer *v.* Central Board of Education of the City of Pittsburg. (No. 1.)

*Equity—Contempt—Injunction—Parties—Discretion of court.*

1. Where an injunction has been issued against a board of education, a corporation, a sole defendant in an equity suit, and a majority of such board with full knowledge of the decree vote to disobey it, each member of such majority may be punished for contempt, and they cannot urge against an order of contempt that the courts could not interfere with their quasi judicial discretion as public officers, so long as the injunction order had not been rescinded or modified.

2. An appellate court does not review an order of contempt on its merits. Every fact found by the lower court on a proceeding for contempt is to be taken as true, if it appears that the court proceeded within and did not exceed its jurisdiction; but for the purpose of seeing its jurisdiction has not been transcended, and that its proceedings, as they appear of record, have been according to law, the appellate court possesses, and is bound to exercise, supervisory power.

Argued April 16, 1909. Appeal, No. 90, April T., 1909, by S. C. Jamison et al., members of the Central Board of Education of the City of Pittsburg, from decree of C. P. No. 4, Allegheny Co., No. 649, Third Term, 1907, in proceedings for contempt in case of George C. Palmer et al., trading as Palmer &

Hornbostel, and Emlyn Stewardson et al., trading as Cope & Stewardson, and Cass Gilbert v. The Central Board of Education of the City of Pittsburg. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Petition for an attachment for contempt.

SWEARINGEN, P. J., found the facts to be as follows:

1. As heretofore found in the record of the above-stated case nine designs had been submitted for the competition in accordance with the method adopted by the Central Board of Education at its meeting May 8, 1906. Of these, the design of Rutan & Russell, No. 9, had been recommended for adoption in accordance with said programme of competition, and on December 11, 1906, the Central Board of Education refused to adopt the report of the building committee. A motion was made to reconsider said vote, which motion was laid upon the table. Nothing further was done with that competition.

On June 4, 1907, the new building committee reported to the central board that it had selected F. J. Osterling as the architect and recommended his design. This report at that time failed for want of a majority. In making choice of F. J. Osterling as architect the building committee and the board abandoned the plan of competition which had theretofore been adopted, and were proceeding under another and different method altogether.

Thereupon the bill in this case was filed, in which the plaintiffs prayed for an injunction to restrain the Central Board of Education from choosing an architect otherwise than by the plan of competition formerly provided. The case proceeded to final hearing and the decree was entered January 2, 1908, in which the injunction prayed for was granted. From this decree an appeal was taken to the Supreme Court of Pennsylvania and on April 30, 1908, a remitittur from the Supreme Court was filed showing that the decree of the lower court had been affirmed and the appeal dismissed.

The respondents, to wit: S. C. Jamison, President; Bart Fleming, M. G. Hayes, Evan Jones, P. B. Kearns, Edward Kenna, E. J. Kirby, R. P. Lougeay, T. E. Metcalf, W. S. McCutcheon, Wm. B. McHugh, J. M. Patton, Peter J. Pfaadt, Dr.

J. W. Phillips, Dr. J. P. Saling, Eugene Schwartzwaelder, P. F. Toole, J. P. Woods, W. H. Ziefel, Frederick Bruckman, P. Fitzgerald, F. V. Martin and John L. Freker, expressly admit in their answer that "they have had full notice of the decree of your honorable court and the affirmation of that decree by the Supreme Court of Pennsylvania."

2. On May 12, 1908, the special committee of the Central Board of Education, which had been appointed to select plans and an architect for a new high school building, met. The following members were present: Messrs. Foley, Jamison, Jones, Kirby, McHugh, Phillips, Reinecke and Saling. It was resolved to report to the central board that disposition be made of the design presented by Rutan & Russell. A motion to hear an explanation of the designs from Prof. Warren P. Laird, the advisor, was lost.

On May 14, 1908, the Central Board of Education met, and finally rejected the designs submitted by Rutan & Russell, which had been recommended to the board on December 11, 1906.

On May 21, 1908, the said building committee again met, with Dr. J. P. Saling in the chair. The following members were present: Messrs. Easton, Foley, Jones, Kirby, Phillips, Reinecke and Saling. The committee took up the design No. 7. The envelope was opened and it was found that Cass Gilbert was the author of design No. 7 and thereupon the committee unanimously adopted a report to the central board that the design next in merit was that of Mr. Cass Gilbert, which was submitted for the approval of the board, and recommended his election as architect. This meeting of the building committee was in session about two hours.

On May 22, this report was submitted to the central board and by a vote of ten ayes to twenty-six nays the report was not adopted. Of the members of the building committee who had recommended the adoption of the design of Cass Gilbert and the choice of him as architect, Jones, Kirby, McHugh, Phillips and Saling voted in the negative when the report came before the board.

A motion was then made that a recess of twenty minutes be

taken and that the committee meet and make another recommendation. Thereupon the building committee again met with Messrs. Easton, Foley, Jones, Jamison, Kirby, McHugh, Phillips and Saling present. A motion was made and agreed to take up the design next in order of merit. None of the remaining designs were even present before the committee. A protest was made by Mr. Easton and Mr. Foley against proceeding having the designs, to which no attention was paid. Thereupon design No. 2 was taken up and the same report was recommended to the board as had been made upon the design submitted by Cass Gilbert, except that the name of Cass Gilbert was stricken out and the name of Edward Stotz, who was found to be the author of No. 2, was substituted.

Forthwith that report was made to the central board, which had reconvened after an intermission of twenty minutes, and the design of Edward Stotz was not adopted, a majority of the members of the building committee again voting in the negative.

Again a suggestion was made by Mr. Foley that Prof. Warren P. Laird be requested to attend to aid the committee in conducting the competition, which was declared out of order, and the board again adjourned for fifteen minutes that the committee might select another plan.

The committee then did meet and took up another design and made the same report as it had made in the previous cases, substituting the name of another architect in place of the names of those previously rejected. The central board reconvened at the end of the recess of fifteen minutes and rejected that report. In like manner the board and the committee disposed of the designs of all the remaining architects, the committee meeting during the intermissions which at first were for twenty minutes, afterwards for fifteen minutes and once for ten minutes, by substantially the same vote. Occasionally the votes differed, but the respondents were always found voting in the negative.

4. Professor Warren P. Laird who had been selected as the professional adviser of the committee was not present at any of these meetings of either the central board or the building

committee from May 12 to May 22, both inclusive. His presence was requested on several occasions, both in committee and in the central board, but the request was always refused by the majority of the committee and of the board.

The said general board met on the evening of May 8, 1908, at about 8 o'clock P. M. and finally adjourned at about 10:45 o'clock P. M. During that period of about two hours and forty-five minutes, six designs were disposed of by the building committee and seven by the board itself. The evidence does not show that any consideration was given to any of these designs other than that of the most perfunctory kind. They were each in turn taken up by the building committee and reported to the board with a recommendation of adoption as quickly as possible, and each in turn was rejected by the board in a like perfunctory manner, and all the members of the building committee which recommended each of these designs, except Easton, Foley and Reinecke, voted for their rejection when the designs came before the board.

5. On May 26, 1908, the Central Board of Education again met and took up the plans of J. F. Osterling, whose consideration had been suspended by the filing of the bill in this case June 11, 1907. By the following vote said plans were adopted and Mr. Osterling elected architect, viz.:

Ayes: S. C. Jamison, Bart Fleming, M. G. Hayes, Evan Jones, P. B. Kearns, Edward Kenna, E. J. Kirby, R. P. Lougeay, T. E. Metcalf, W. S. McCutcheon, Wm. B. McHugh, J. M. Patton, Peter J. Pfaadt, Dr. J. W. Phillips, Dr. J. P. Saling, Eugene Schwartzwaelder, P. F. Toole, J. P. Woods, W. H. Ziefel, Frederick Bruckman, P. Fitzgerald, F. V. Martin and John L. Freker.

Nays: Beatty, Force, Gillespie, Glazier, Johnson, McPherson, Neely, Reif, Shaw, Easton and Shooke.

Not voting: Mr. Stauffer.

The court entered a decree fining each of the members of the board who voted in disobedience of the injunction order in the sum of $100.

*Error assigned* was the decree of the court.

*John S. Ferguson,* with him *W. J. Brennen* and *Burleigh, Grey & Challener,* for appellants.—The statute concerning contempts is a penal statute and must be strictly construed in favor of those accused of violating its prohibitions: Maxwell v. Rives, 11 Nev. 213; Rutherford v. Holmes, 66 N. Y. 368.

In determining whether or not it would select one of the competing architects, or reject all of them, the central board was performing a legislative act. It was the appointee of the legislature of the state of Pennsylvania for the exercise of just such a legislative act: Judges v. People, 18 Wend. (N. Y.) 79; N. Y. & H. R. R. Co. v. New York, 1 Hilton, 562; Dechert v. Com., 113 Pa. 272; Roth v. Marshall, 158 Pa. 272; Baker v. Boston, 29 Mass. 184.

To sustain this conviction would practically control the discretionary power vested in the central board, in the selection of an architect: Com. v. Mitchell, 82 Pa. 343; Runkle v. Com., 97 Pa. 328; American Pavement Co. v. Wagner, 139 Pa. 623.

*Thos. Patterson,* of *Patterson, Sterrett & Acheson,* for appellees.—While an injunction lives, the most exact and implicit obedience is required. It cannot be violated with impunity. Disobedience to it is a contempt. Upon proceedings for contempt in this class of cases, the only legitimate inquiry is as to the jurisdiction of the court, as to the parties and subject-matter, and whether the decree was made and has been obeyed: Rodgers v. Pitt, 89 Fed. Repr. 424; People v. Bergen, 53 N. Y. 404; Russell v. Ry. Co., 3 MacN. & G. 104.

OPINION BY HEAD, J., July 14, 1909:

To reverse the order, adjudging the appellants in this case guilty of a contemptuous refusal to obey a final decree of a court of equity, we must reach the conclusion, (a) that the court had no power to attach and punish them, even if it was right in finding, as a fact, that there was such refusal to obey; or (b) that the court committed reversible error in finding the fact of such contempt on the evidence before it.

With the facts that led up to the entry of the final decree we have now but little concern. They are fully stated in the find-

ings of the learned court and in the opinion of Mr. Justice STEW-ART, in Palmer v. Central Board of Education, 220 Pa. 568, where the decree was affirmed.

The obligation of everyone, properly affected with notice of such decree, to honestly and in good faith obey it in letter and spirit, has been so frequently and emphatically declared in the numerous cases, cited in the briefs on both sides, that its existence may be here assumed without discussion.

The first reason advanced to support the denial of the power of the court in the premises, rests on the allegation that these appellants were not parties to the bill in which the decree was entered and therefore cannot be attached for refusing to obey it.

The defendant named in the bill was the Central Board of Education of the city of Pittsburg, a corporation. Against that board the injunctive decree issued. The present appellants constitute a majority of the members of that board. The will of such a majority, properly expressed, is the will of the corporation. The corporate acts are but the public manifestations of that will. The corporate act, here alleged to be contemptuous, had its birth in the votes of these appellants. Each one of them had full notice of the decree. If there was any contempt of that decree, they not only aided and abetted it, they actually compelled it. Following the line of reasoning more fully developed in Patterson v. Wyoming Valley District Council, 31 Pa. Superior Ct. 112, we dismiss this contention as being without merit.

It is further urged upon us that the defendants, being elective municipal officers of the city of Pittsburg, were invested with a quasi judicial discretion in the performance of their official duties, and that the exercise of such discretion may not be coerced by the courts, so as to accomplish a particular result. If the soundness of the general proposition be conceded, it is wholly beside the mark. The question whether or not the decree was rightfully entered is no longer an open one. Until rescinded or modified by the power that entered it, obedience to it by everyone, individual or official, affected by it, is the paramount duty.

But it is manifest that the decree entered in no way infringed upon the discretionary powers of the appellants. No court

would have undertaken to have coerced the board to have adopted the resolution of May 8 or to have assumed the contractual relations towards the competing architects that resulted therefrom. The making of that contract and the creation of its consequent obligations were the voluntary acts of the board, in the exercise of the discretion with which its members were legally invested. But after the contract was thus made and its fruits had been gathered, it no longer remained a matter to be determined by the discretion of the board or its members whether the rights of the other parties to that contract should be accorded or withheld.

We are now to consider whether the record discloses any error on the part of the court in finding, from the evidence, that its decree had been disobeyed or in imposing the sentence appealed from. The right of a court to finally ascertain for itself the existence of a contempt which it has the inherent right to punish has been clearly and strongly stated by the Supreme Court of the United States in In re Debs, 158 U. S. 564. In the course of his exposition of the law on that subject Mr. Justice BREWER says: "In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency." Other cases wherein the same doctrine is declared are cited in Patterson v. Wyoming Valley District Council, 31 Pa. Superior Ct. 112.

As applied by our own Supreme Court, this principle is not to be understood to warrant the conclusion that our appellate courts have no revisory power in cases of attachment for contempt; but that the limits within which it is to be exercised are narrow and well defined. In Com. v. Newton, 1 Grant's Cases, 453, WOODWARD, J., speaking for that court, said: "We do not indeed revise such cases on their merits. The courts, having a limited jurisdiction in contempts, every fact found by them is to be taken as true, if it appears to us that they proceeded within and did not exceed their jurisdiction; but for the purpose of seeing that their jurisdiction has not been transcended,

and that their proceedings, as they appear of record have been according to law, we possess, and are bound to exercise supervisory power over the courts of the commonwealth."

We have already endeavored to show that the court below, in attaching the appellants, proceeded within and did not exceed its jurisdiction. It is not alleged that the proceedings, as they appear of record, were not formal, regular and according to law. The learned court, in its opinion, states in detail the history of what transpired, the exact things done by the appellants and the manner in which they were done. From these he draws this conclusion: "All of this shows that the plain purpose of the majority of the Central Board, these respondents, was to get rid of the competition as rapidly as possible. It all indicates a purpose to evade, rather than obey the decree of the court."

When we say this conclusion has, in our judgment, ample evidence to support it we say all that is needful to sustain the order appealed from, without expressing our own views of the conduct of appellants as portrayed in the evidence.

Order affirmed and appeal dismissed at the costs of appellants.