Commonwealth *v.* Laniewski, Appellant.

Argued April 13, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and WRIGHT, JJ. (GUNTHER, J., absent).

*Thompson Bradshaw,* with him *Bradshaw & Panner,* for appellant.

*Richard P. Steward,* District Attorney, for appellee.

OPINION BY WRIGHT, J., July 14, 1953:

Frank Laniewski, Tom DiSantis, and Francis Mark were indicted on a charge of setting up and conducting

a lottery. DiSantis and Mark pleaded guilty and appeared as witnesses for the Commonwealth. Laniewski offered no testimony, but requested the trial judge to direct a verdict of not guilty, which request was refused. After verdict of guilty, motions in arrest of judgment and for a new trial were overruled, and this appeal followed.

The indictment was based on Section 601 of the Act of June 24, 1939, P. L. 872, 18 P.S. §4601, which reads as follows:

"All lotteries, whether public or private, for moneys, goods, wares or merchandise, chattels, lands, tenements, hereditaments, or other matters or things whatsoever, are hereby declared to be common nuisances. Every grant, bargain, sale, conveyance or transfer of any goods or chattels, lands, tenements or hereditaments, which shall be made in pursuance of any such lottery, is hereby declared to be invalid and void.

"Whoever, either publicly or privately, erects, sets up, opens, makes or draws any lottery, or is in any way concerned in the managing, conducting or carrying on the same, is guilty of a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars, or undergo imprisonment, by separate or solitary confinement at labor, not exceeding one (1) year, or both".

The record discloses that on November 1, 1951, DiSantis and Mark, as agents of Laniewski, sold Jack George three identical "All American" tickets. On these tickets were listed twenty football games to be played on Saturday, November 3, 1951. The ticket holder could select three to fifteen games and the odds ran from 5 to 1 for three correct selections to 900 to 1 for fifteen correct. As a consolation, one miss in ten games paid 20 to 1. The tickets undertook to equalize the teams by "spotting" points in certain games. For example, Alabama and Georgia were rated even, Arkansas was

"spotted" 6 points against Texas A. & M., Penn State was "spotted" 7 points against Purdue, and so on. The player might pick either team in any game (subject to the handicap shown on the ticket) wagering that such team would win. George paid $2.00 for one of the tickets and on it selected eleven teams, all of which won. He paid $1.00 each for the other two tickets and on each of them he correctly choose three teams, which also won. The odds on an eleven team choice were 450 to 1 so that George won $900.00 on that ticket. At 5 to 1 on the other tickets he won $5.00 each.

The indictment charges that "The defendant did unlawfully, publicly and privately erect, set up, open, make and draw a certain common nuisance, to-wit: a lottery for moneys . . . and unlawfully then and there was concerned in divers ways and manners in the managing, conducting and carrying on of the said common nuisance, to-wit: the said lottery aforesaid". It is frankly conceded that "defendant was booking wagers and that the business was a gambling business. The question is, was it a lottery". Our answer depends upon "whether the scheme conducted by the appellant may reasonably and fairly be included within the term as commonly used and understood": *Com. v. Banks*, 98 Pa. Superior Ct. 432, 434.

The word "lottery" has been subject to many definitions. "Our own statute begins by declaring all lotteries, public or private, to be common nuisances. It is this general and public effect of the system which brings it under condemnation. This is because of the tendency of such systems and practices to inflame the gambling instinct, and to corrupt public morals": *Com. v. Lund*, 142 Pa. Superior Ct. 208, 222, 15 A. 2d 839. There is an excellent discussion by Judge KELLER in *Com. v. Banks*, supra. The definition in Corpus Juris Secundum, Vol. 54, Lotteries, §1, summarizes the language of many of the cases in these words: "A lottery is a species

of gaming wherein prizes are distributed by chance among persons paying a consideration for the chance to win; a game of hazard in which sums are ventured for the chance to obtain a larger value in money or articles". To constitute a lottery there must be (1) a prize to be won, (2) the determination of the winner by chance, and (3) a consideration: *Com. v. Lund,* supra.

In the present case it is not disputed that there was a consideration and a prize. The question here involved is the interpretation of the word "chance". Appellant argues that the bettor "himself graduates or handicaps the teams and makes his own choice". He contends that the bettor could pick as many or as few teams as he wished (within the limits of the ticket), and that in making his choice he had the opportunity to exercise skill and judgment. His contention therefore is that the bettor was merely pitting his ability against that of the handicapper, and that "anti-social though it may be . . . peddling bets on athletic contests is not an offense . . .". We cannot agree.

It is true that for an avid student of the sport of football the chance taken is not so great as for those who have little interest in the game. However, it is common knowledge that the predictions even among these so-called "experts" are far from infallible. Any attempt to forecast the result of a single athletic contest, be it football, baseball, or whatever, is fraught with chance. This hazard is multiplied directly by the number of predictions made. The operators of the scheme involved in this case were well cognizant of this fact for the odds against a correct number of selections were increased form 5 to 1 for three teams picked up to 900 to 1 for fifteen teams.

"Chance", as an essential element of a lottery, is used in the sense of being opposed to something which happens by plan or design, or by the exercise of volition or judgment: 54 C.J.S. Lotteries, §2b. However, this

controlling essential need not be pure chance, but may be accompanied by an element of calculation or skill. It is sufficient that chance be the dominant factor: American Jurisprudence, Vol. 34, p. 649. Hence a particular scheme may be a lottery even though skill, judgment or research enter into it in some degree, if chance in a larger degree determines the result: *State ex Inf. McKittrick v. Globe-Democrat Pub. Co.*, 341 Mo. 862, 110 S.W. 2d 705. Such was the situation here. Past records, statistics and other data might be consulted and, by reasoning from them, a forecast might be made as to the outcome of any particular game or games. However, there are many unpredictable elements which can and do enter into the eventual outcome. These elements—including the fact that at least twenty-two men are concerned in playing the game—constitute the chance which makes this particular pool a lottery. No one knows what may happen once the game has begun. In the words of Mr. Justice HOLMES in *Dillingham v. McLaughlin*, 264 U. S. 370, 44 S. Ct. 362, 68 L. Ed. 742, "What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law".

George, the bettor in this case, was extremely fortunate. As was said by President Judge McCREARY of the lower court in his well considered opinion: "Perhaps it is not 'pure chance' that the blind boy picked eleven winners on one ticket; he may have used some skill and judgment, but very definitely the element of chance predominated over skill and determined the winner". As pointed out by counsel for the Commonwealth, it is significant "that the promoter holds out to all takers his offer to bet either way. That very fact answers and eliminates Appellant's excuse that the venture is a matching of skill and judgment".

The judgment of the lower court is affirmed and it is ordered that the defendant appear in that court at

such time as he may be there called and that he be by the court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.