Morris L. JOHNSON, Appellant,

v.

Robert L. PHINNEY, Director of Internal Revenue of United States of America for Southern District of Texas.

No. 15077.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1955.

**304**

Ben. F. McDonald, Jr., Corpus Christi, Tex., Warren & McDonald, Corpus Christi, Tex., for appellant.

C. Guy Tadlock, Sp. Asst. to Atty. Gen., D. of J., Ellis N. Slack, Asst. Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Charles F. Herring, U. S. Atty., San Antonio, Tex., Bradford F. Miller, Asst. U. S. Atty., Seneca Falls, Tex., Grant W. Wiprud, Sp. Asst. to Atty. Gen., for appellee.

Before BORAH and TUTTLE, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

The Commissioner assessed taxes against appellant under Sections 3285[1] and 3290[2] of the Internal Revenue Code. Appellant paid the taxes and brought this suit to recover, alleging: that he op-

---

1. 65 Stat. 529, 26 U.S.C.A. § 3285.

"(a) Wagers. There shall be imposed on wagers, as defined in subsection (b), an excise tax equal to 10 per centum of the amount thereof.

"(b) Definitions. For the purposes of this chapter—

"(1) The term 'wager' means * * *, (C) any wager placed in a lottery conducted for profit.

"(2) The term 'lottery' includes the numbers game, policy, and similar types of wagering. The term does not include (A) any game of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game * * *.
* * * * *
"(e) Exclusions from tax. No tax shall be imposed by this subchapter * * * (2) on any wager placed in a coin-operated device with respect to which an occupational tax is imposed by section 3267."

2. 65 Stat. 530, 26 U.S.C.A. § 3290.

"A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

erated a restaurant and amusement hall in which he had placed two one-ball marble machines on which the coin slots were blocked off; that he sold games on the machines for 5¢ each, the number purchased being recorded on the machine by an electrical control device; that free games could be won by the player's skill in achieving pre-conceived objects which were noted on the machine; that sometimes, but not always he would redeem unused free games at 5¢ each; that when free games were redeemed, it was done immediately after the game and in the presence of all persons participating in the game; that the statutes did not contemplate a tax on such machines and that the taxes were illegally assessed and collected. The Director admitted generally these allegations, but denied the conclusions drawn by appellant, particularly that free games were won by skill.

Prior to trial before a jury, appellant moved for summary judgment and attached his affidavit in support of the motion. This affidavit repeated and amplified the facts alleged in the complaint. It pointed out that no prize was given for high score over any period of time and that each game played by an individual *was a separate transaction in no way connected with previous or subsequent games or players.* The motion was denied.

On the trial appellant testified substantially in accord with his complaint but on cross-examination it appeared that the machines were owned by one Neill and placed in appellant's establishment on a rental basis. Neill had nothing to do with the physical operation of the machines, but appellant paid him fifty per cent of the net profits from their operation (gross receipts less amounts paid out in redeeming free games). However, it appeared that if a net loss resulted, it would be borne by appellant alone.

Appellant and another "expert" witness described the operation of the machines substantially as follows: a person desiring to play paid appellant (or his employee if appellant were absent) who then pressed a button to record on the machine the number of games purchased and to activate it for play. The player then pressed a button on the machine to put it in play, and electrical devices caused certain lights to come on at bumpers or holes on the table. The particular object to be achieved would be lighted on the back board of the machine, together with the odds with which the player was faced. Proceeding, the player pulled back a plunger to propel the one ball or marble onto the table top, in a manner, as contended, to make it strike the bumper or fall in the hole indicated as the object on the machine for that particular game. If the object were achieved, the machine itself registered free games as indicated by the odds. The player could then play off these games or request appellant to redeem them in cash at 5¢ per game.

Appellant and his witness testified that players could control the speed of the ball by skillful manipulation of the plunger, and could also control the direction of the ball on the table top by nudging or otherwise slightly moving the machine. From these facts each contended that skillful players could win more often than unskilled players and that the game was therefore one of skill. Appellant and other witnesses also testified that the machines were used primarily for amusement, and that they were so hard to beat that they offered no attraction for professional gamblers. Further, appellant stated that he did not obligate himself unconditionally to redeem free games in cash, and that often he refused to do so in order to rid himself of undesirable patrons.

At the close of appellant's case, on motion, the trial judge directed a verdict and entered judgment for the defendant. Appealing from that judgment, appellant argues, (1) that there were no disputed issues of fact apparent from the pleadings and his supporting affidavit, and that the trial judge erred in not granting summary judgment in his favor; (2) that the uncontroverted facts

show the statutes in question are not applicable to machines operated like those here and the trial judge erroneously directed a verdict for the defendant. More or less alternatively, appellant also contends that if there were issues of fact, they should have been submitted to the jury.

It is argued, from committee reports and Congressional discussion of the statutes, that the word "lottery" as used in Section 3285 does not contemplate the inclusion of a game like the one involved here. Further, appellant argues, even if it be conceded that the machines are a lottery, the wagers are placed, the winners are determined and the prizes are distributed in the presence of all persons involved in the game, and his operation therefore comes within the express wording of the exclusion in the statute. He makes the additional contention that even if the statute otherwise applied, the machines are identical in operation with coin-operated machines and subject to the tax levied by Section 3267.[3]

■ At the outset it is necessary to determine what Congress generally intended to tax when it enacted Section 3285. The statute, in pertinent part, taxes wagers "placed in a lottery conducted for profit." We think the legislative history of the Act clearly reveals the intention that the term "lottery" was used and should be interpreted in the broad and general sense.[4] The specific exclusions and the reasons therefor will be dealt with later.

■ Although there are statutes specifically defining the word "lottery", in the general sense it refers to a gambling game or device wherein one gives up something of value for the chance of obtaining a prize in money or property of value. Its essential elements are chance, consideration and a prize. With respect to the element of chance, the authorities are in general agreement that if such element is present and predominates in the determination of a winner, the fact that players may exercise varying degrees of skill is immaterial; and the game or device is a lottery. 54 C.J.S., Lotteries, page 842 et seq.; 135 A.L.R. 149; Federal Communications Commission v. American Broadcasting Co., 347 U.S. 284, 74 S.Ct. 593, 98 L.Ed. 699; State v. Wiley, 232 Iowa 443, 3 N.W.2d 620; State v. Coats, 158 Or. 122, 74 P.2d 1102; State ex rel. Dussault v. Kilburn, 111 Mont. 400, 109 P.2d 1113, 135 A.L.R. 99; State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So.2d 27; Stanley v. State, 194 Ark. 483, 107 S.W.2d 532; State v. Langford, Tex.Civ.App., 144 S.W.2d 448.

■ There is no serious dispute here concerning the presence of the elements

---

3. "(a) Rate. Every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device shall pay a special tax as follows:

\* \* \* \* \*

"(b) Definition. As used in this Part, the term 'coin-operated amusement and gaming devices' means (1) any amusement or music machine operated by means of the insertion of a coin, token, or similar object, and (2) so-called 'slot' machines which operate by means of insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premium, merchandise, or tokens. \* \* \*." 26 U.S.C.A. § 3267.

4. For instance, in recommending passage of the bill, the House Ways and Means Committee remarked: "Although the bill does not contain an all-inclusive definition of the term 'lottery,' in general the term is intended to mean *any* scheme for the distribution of property by chance among persons who have paid or have agreed to pay a valuable consideration for the chance, whether called a lottery, raffle, gift enterprise, or some other name. \* \* \* *Because the term 'lottery' is intended to be broadly construed in order to limit the opportunities for avoidance,* your committee has specifically excluded from the term certain types of gambling games which might otherwise come within its technical meaning although perhaps not commonly so considered." (Emphasis supplied.) H.R. No. 586, 82d Congress; U. S. Code Congressional and Administrative Service, 1951, pages 1839–1840.

of consideration and prize, nor could there be one. Appellant alleges and his evidence affirms that players buy games on the pinball machines at 5¢ each and, for the most part, redeem free plays at the same rate. We think it is equally clear that the element of chance is not only present but predominates, notwithstanding the allegations and testimony to the contrary. When appellant and his witnesses described the construction and operation of the machines, they supplied the evidentiary facts; and their statements that skill predominates were merely self-serving conclusions on one of the points at issue.

When the machines are activated by appellant by remote control, electrical devices concealed from the player determine the objects he seeks to obtain. The objects are mathematically calculated in the manufacture of the machine, and the player has no control whatsoever over their selection. When he buys a play, he may get objects easily or difficultly attained, and the only way he can change those objects is to buy another play—and again he has no control over what comes up.

When he begins the play, he can only propel the ball along a designated channel toward pins or holes, the location of which is likewise selected in the manufacture. No doubt, habitual players who have studied a particular machine may attain a degree of proficiency in deciding the force to apply to the ball or in nudging the machine so that the ball is more likely to strike a particular bumper or fall into a particular hole; but even the most skillful player combats predetermined conditions and odds which are completely beyond his judgment and control. If, as appellant argues, his patrons are primarily business men and salesmen who amuse themselves on the machines during leisure periods, it is all the more apparent that success depends upon the manufactured features of the machines and other completely extraneous conditions—the element of chance.

Since the Director denied and the facts admitted refute the contention of appellant that the element of skill predominates in determining success, the trial judge was correct in denying the motion for summary judgment. Insofar as his action bore upon the point, we think he was also correct in concluding as a matter of law that the pinball machines as operated by appellant constitute a lottery and in not submitting that issue to the jury. As we have stated, the evidence undeniably showed the predominance of chance; and even if it be true, as argued by appellant, that this was a fact question, we are of the opinion that the only reasonable conclusion is the one reached by the trial judge.

■ It remains, then, to determine whether or not appellant's operation of the machines comes within the exclusion established by the statute. There was a good deal of evidence and argument as to the interest the owner of the machines had in their operation—whether or not he was a participant in the game. We need not decide this controversy. Assuming that the wagers are placed, the winners determined and the prizes distributed in the presence of all persons participating in the game, we are of the opinion that pinball is not the type of game intended to be exempt from taxation under Sec. 3285(b) (2). The Committee report, supra, note 4, describes in some detail the reasons for establishing an exclusion and the type of game intended to be excluded:

"* * * Among those games which are within the scope of the exclusion would be card games such as draw poker, stud poker, and blackjack, roulette games, dice games such as craps, bingo games, and the gambling wheels frequently encountered at country fairs and charity bazaars. On the other hand, punchboards would not normally be excluded under this definition.

"Your committee has not excluded the above types of gambling because of any belief that they are not suitable subjects for taxation. However, the method of taxation which the bill proposes, * * * does not ap-

pear readily adaptable to these other forms of gambling. For example, there are obvious practical difficulties in ascertaining gross amount of wagers made in the course of a dice game and other games in which there is direct and continuous player participation. Moreover, with respect to card games it is frequently difficult to ascertain who, if anybody, is the person operating the game and what his tax liability should be. * * * Moreover, many of these types of games are frequently engaged in on a friendly or social basis rather than professionally. A differentiation for tax purposes between friendly and professional games would create serious statutory and administrative problems. It is not expected that this problem will exist to any serious extent in the areas within which the bill does impose tax. * * * In any event, your committee believes that the tax it proposes will cover at least 90 percent of total commercial wagering."

So it seems evident that the exclusion was intended to extend only to those wagering games which are indulged in by individuals on a "friendly" basis, and which, because of their nature, are not readily susceptible to assessment of the tax as established by the statute. Pinball requires a machine which is owned or operated by an identifiable person and each wager is a separate transaction susceptible of recordation and administrative regulation. Further, while the players on pinball machines may wager in a friendly fashion among themselves, as between the player and the "house" there is a distinct transaction and the contest constitutes professional gambling insofar as the owner or operator of the machine is concerned. The machines as operated by the appellant here clearly fall without the class intended to be covered by the statutory exclusion.

▉ The exclusion of coin-operated machines, taxable under Section 3267, is not available to appellant here for the simple reason that his machines are not coin-operated. However similar they might otherwise be to machines which are coin-operated, the statute is clear and unambiguous in its terms, and we find no indication that it is intended to extend to machines such as those operated by appellant. Since the tax under Section 3285 was properly assessed, appellant was also liable for the tax imposed by Section 3290.

The judgment is

Affirmed.