## Clock Bar, Inc. Appeal (No. 1)

*G. Thomas Miller*, for appellant.

*Walter E. Alessandroni*, Attorney General, and *J. Leonard Langan* and *Thomas J. Shannon*, Assistant Attorneys General, for Commonwealth.

LIPSITT, J., April 20, 1966.—This proceeding is an appeal from an order by the Pennsylvania Liquor Control Board (hereinafter called "Board") suspending the Restaurant Liquor License of Clock Bar, Inc. (hereinafter called "licensee") for a period of 50 days. On August 17, 1964, the board issued a citation to licensee to show cause why its license should not be revoked, charging a violation of section 471 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-471. After a hearing held before a board examiner on November 5, 1964, the board issued its order on June 1, 1965, basing it on findings that licensee had committed the offenses for which it had been cited, to wit, (1) licensee, by its servants, agents or employes, operated a lottery on the licensed premises on April 17, 1964; (2) licensee, by its servants, agents or employes, offered and/or gave liquor in a lottery on April 17, 1964, and (3) licensee, by its servants, agents or employes, failed to regularly clean, at least once every seven days, all coils, tap rods and connections used in the operation of drawing malt or brewed beverages in the licensed establishment and keep a record thereof.

The licensee appealed to this court from the aforesaid suspension order. A hearing de novo was held on August 12, 1965.

### THE LOTTERY CHARGE

The following evidence as to the lottery charge was adduced principally from the witness, Vincent J. Guest, an enforcement officer of the board. Mr. Guest testified that on April 9, 1964, at 7:30 p.m., he entered the licensed establishment and heard George, the bartender on duty (later identified as George Dare), and a cus-

tomer conversing about the customer winning a bottle of Scotch. He later heard the bartender, George Dare, tell his brother, Kenneth Dare, the president of the licensed corporation, that the customer had won a bottle of Scotch. On April 17, 1964, at 7:00 p.m., Mr. Guest again visited the licensed premises and asked the bartender, George Dare, if he could try for a bottle of Scotch. The agent said that he was in one night when a person won a bottle. George Dare gave the agent 10 dimes for a dollar and told him that he needed to bowl a certain score on the bowling machine. The agent played the machine and made the required score, after which he was permitted to sign his name on a card consisting of a series of lines and numbers. The card had the word "bowling" written on the top and contained 100 numbers with blank spaces along each one. Approximately one third of the blank spaces were filled. The agent signed the name of Vince Car in one of the blank spaces. He then asked George Dare when the winner would be selected, and the reply was when the card was filled. On April 22, 1964, Mr. Guest visited the premises at 6:45 p.m., and on this occasion Kenneth Dare, the president of the corporation, was tending bar. The agent asked Kenneth Dare if the card was filled and the winner picked. Kenneth Dare answered that "one of the regular fellows won". The agent then asked if there was a new card and Kenneth Dare stated: "No, the fellow didn't bring in a new one this week". Mr. Guest made three subsequent visits in May and did not find any violations on any of those occasions.

Mr. L. J. Snavely, also an enforcement officer, testified that he made a routine inspection of the premises on June 29, 1964, and found three cards with lines and numbers on them, two of which were blank and a third card containing several names inserted on the various lines.

The principal witnesses for licensee were Kenneth Dare and George Dare. Kenneth Dare testified that he had conceived of an idea of permitting his customers who made a certain score on the bowling machine to enter their names for a drawing for an unspecified prize. After a few days, it was learned that the scheme was illegal and the practice was discontinued. He testified that no prize was ever given and that if he told the agent Guest that another person had won, it was simply to get rid of Guest rather than explain that the contest had been discontinued. Both the Dare brothers said that no bottle of whiskey had ever been given or promised, and Kenneth Dare offered the explanation that Guest may have overheard some conversation among the patrons about betting on a sports or political event. Kenneth Dare stated further that the one card with the names inserted which the agent Snavely had found was kept because the reverse side was used on the occasion of "jam sessions" as a sign to direct patrons to use a particular door. Two other witnesses were called by licensee, who were identified as regular patrons and they said that they had never seen any persons participating in any contest to win any sort of prize; nor had they seen any prize awarded.

On appeal, the board must meet the burden of proof that a lottery was established or operated at licensee's premises, and it may sustain this burden by presentation of a preponderance of evidence. This proceeding ". . . is not a criminal prosecution, but the imposition of a civil sanction": Bayer Liquor License Case, 200 Pa. Superior Ct. 210, 213-14 (1963). "In a civil proceeding to revoke a license, it is sufficient if the offense be established by a preponderance of the evidence": Moravian Bar, Inc. Liquor License Case, 200 Pa. Superior Ct. 231, 234 (1963), citing Summit Hill Rod and Gun Club Liquor License Case, 184 Pa. Superior Ct. 584 (1957).

Keeping in mind the burden placed upon the board,

various phases of the testimony must be examined to determine if the constituent elements of the establishment or operation of a lottery exist.

At the hearing, counsel for the board stated that the violation was that defined by section 601 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4601, which declares the maintaining of a lottery to be a misdemeanor. In its brief, the board sets forth section 602 of The Penal Code, 18 PS §4602, which is titled "Traffic in lottery tickets" as the pertinent provision. The term "lottery" is not defined in the code, and the distinctions in meaning between the two sections are not of significance in this case.

The elements of a lottery are outlined in Commonwealth v. Laniewski, 173 Pa. Superior Ct. 245, 248-49 (1953), wherein the definition in 54 C. J. S. §1, is adopted: "A lottery is a species of gaming wherein prizes are distributed by chance among persons paying a consideration for the chance to win; a game of hazard in which sums are ventured for the chance to obtain a larger value in money or articles". The court then stated: "To constitute a lottery there must be (1) a prize to be won, (2) the determination of the winner by chance, and (3) a consideration".

The first element concerns the prize to be won. Licensee points out that the board's agents did not at any time see any bottle of liquor nor observe a bottle given to any person on the premises. It contends that there was some thought about a "prize", but it was never actually determined what the "prize" would be during the short period the contest was conducted and that the contest never came to fruition. The board directs the court's attention to the various statements and actions by both George and Kenneth Dare. At one time George Dare had told a patron that he had won a bottle of Scotch; there was a remark by George Dare to Kenneth Dare that a bottle of Scotch had been won by a patron; there was a nodding to the winner of the

prize by George Dare to identify the winner; there was an explanation by George Dare to Mr. Guest as to the means of participating in the contest (by playing the bowling machine and signing the bowling card after a minimum score was obtained) ; and a comment by Kenneth Dare that the bottle of Scotch had been won by a regular patron.

In corroboration was the actual participating of the agent Guest by playing the bowling machine and his signing the bowling card after he scored the minimum.

Of course, the implications of the testimony by the enforcement agent of the board were denied, but in connection with some of the testimony, various possibilities were suggested by licensee to show that the agent may have been mistaken in his observation. Although single statements or acts may be subject to different interpretations, if the testimony of the enforcement officers, particularly that of Mr. Guest, is accepted as true, the cumulation of all this conduct leads only to the logical inference that there was a prize to be won.

The second element in a lottery is the determination of the winner by chance. Licensee argues that there is no evidence that a winner was ever determined and that the best evidence that the board could produce was three cards with lines and numbers, only one of which had two or three names inserted, and these cards were neither confiscated nor produced in evidence. This argument ignores the aspects of chance inherent in the method used here to select the winner by requiring a minimum score to be made on a bowling machine to become a signator on the bowling card and the selection of the final winner from the signators. Mr. Guest testified that he had signed a card with 100 numbers and lines approximately one third filled with names. If evidence that a winner need be selected is necessary for the board to sustain its burden, there was sufficient

credible testimony to find that a male patron was identified as a winner by George Dare and that Kenneth Dare stated that a winner had been selected.

The third element is that of consideration. Licensee insists that there was no testimony that any consideration passed from any patron to licensee for participating. It asserts that for 10 cents, a patron obtained the right to play a bowling machine for amusement, and this amount would be inadequate consideration for playing the game, much less for the participating in a lottery. To the contrary, the board contends that the selection of the winner of a prize was profitable for licensee by increasing the lure of the bowling machine, and it points out the potential profit in the total receipts in relation to the value of the ordinary cost of a bottle of whiskey. In addition, the board claims that the scheme would result in increased patronage, since a participant would visit the premises to play the machine or inquire as to the winner. The bowling machine is undoubtedly an amusement device, but this does not mean that it can't be used in a lottery scheme. Where there is an offer of a chance to win a prize for a dime and there is an acceptance, consideration exists, and this is especially so where operator-licensee is benefitted.

Credibility is an important factor in this case. There are direct contradictions between the witnesses for the board and those for licensee and in some instances, two versions of the same occurrence. In every phase of the disputed evidence, the testimony of the agents of the board is more plausible than the explanations given by the Dare brothers, who have a direct personal and pecuniary interest in the results of this appeal. It is most unlikely, for instance, that anyone would participate in a contest when a prize is unknown. Certainly, it is likely that a bottle of Scotch would motivate contestants and entice patrons.

It is not difficult to agree with the position of licensee that the facts here do not resemble the typical lottery case. The usual criminal case involves pool tickets on sporting events or the buying of tickets where a person gets nothing except the right to take a chance. The gravity of the violation, however, is not at issue before this court. The enforcement officers of the Liquor Control Board have investigated the premises and found certain conduct to exist. The board has pointed out the elements of a lottery.

It could well be that a district attorney in a county may not prosecute in a case of this kind. The decisions relative to a criminal case which licensee stresses here, such as whether the paraphernalia of a lottery must be produced because part of the evidence is circumstantial (Commonwealth v. Fiorini, 202 Pa. Superior Ct. 88 (1963) ; Commonwealth v. Moore, 180 Pa. Superior Ct. 538 (1955) ), or whether a demurrer would be sustained, are not problems in this action. As stated previously, this is not a criminal proceeding. To meet the burden of proof in this situation, a preponderance of the evidence is sufficient.

### COIL CLEANING CHARGE

Regulation 111.04 of the Liquor Control Board requires that "All coils, tap rods and connections, used in the operation of drawing malt or brewed beverages in licensed establishments, shall be thoroughly cleaned at least once every seven days at the sole expense of the licensee dispensing such beverages on draft". The agent for the board, Mr. Snavely, testified that from December, 1963, to June 29, 1964, licensee's records disclosed that the coils were cleaned every 14 days. After investigation, when licensee was advised there was some question about the procedure, it immediately initiated the process of having the coils cleaned every seven days. Licensee explains this violation in this manner: Kenneth Dare testified that there are two

coils with separate taps at each end of the bar. The person who regularly cleaned the coils suffered a heart attack and requested permission to clean the coils every other week. This permission was granted, but one tap at each end of the bar was used for only one week alternately. It was said that licensee keeps only one kind of beer on tap and that only one coil at each end of the bar was used for a six day period, and then the other coil was used for the next six day operational period; at the end of 12 days of operation, all coils were cleaned. It is true that this explanation was not disputed, and if it is accepted, the position of the Liquor Control Board is at best only technical. There are no Pennsylvania cases which have been found applicable to this alleged violation. The parties have different conceptions as to the meaning of the word "used". The board's position is that the coils used in the operation of drawing beer shall be cleaned at least once every seven days, and not that they will be cleaned once after seven days of use. Even if it is considered merely technical, the violation was incurred and the technicality aspect is immaterial. Unquestionably, the board regarded this violation as a minor matter.

As a general principle, this court could, in the exercise of its discretion under the provisions of section 471 of the Liquor Code, 47 PS §4-471, ". . . sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court". In this proceeding, which is de novo, great latitude is given the court: Berarducci Liquor License Case, 195 Pa. Superior Ct. 524 (1961). If this court, however, would reach conclusions different than those of the board, these conclusions must be based upon findings of fact that are different from those made by the liquor board. If the evidence sustains the findings of fact of the Liquor Control Board, the appeal must be dismissed.

"The court of quarter sessions cannot capriciously disregard competent evidence of violations presented in a hearing before it and reverse the action of the board. Although such a proceeding is an administrative one, the court of quarter sessions does not have discretionary power to act in an arbitrary manner": Janiro Liquor License Case, 163 Pa. Superior Ct. 398, 402 (1948). See also, Heights Fire Company Liquor License Case, 181 Pa. Superior Ct. 56 (1956).

The board offered in evidence certified copies of actions by it on past citations issued against licensee. Although there was an objection made to the offering of these records, the admission of this evidence is proper to guide the court as to the penalty if findings of fact are different from those of the board: Midway Athletic Association Appeal, 189 Pa. Superior Ct. 336 (1959).

In accordance with this opinion, we make the following

### FINDINGS OF FACT

1. Licensee, by its servants, agents or employes, operated a lottery on the licensed premises in April of 1964.

2. Licensee, by its servants, agents or employes, offered and/or gave liquor in a lottery in April of 1964.

3. Licensee, by its servants, agents or employes, failed to regularly clean at least once every seven days all coils, tap rods and connections used in the operation of drawing malt or brewed beverages in the licensed establishment and keep a record thereof.

We, therefore, make the following

### CONCLUSIONS OF LAW

1. The matter is properly before us.

2. The penalty imposed by the Pennsylvania Liquor Control Board was proper.

We, therefore, make the following

ORDER

· And now, April 20, 1966, it is ordered and decreed that the appeal by Clock Bar, Inc., from the suspension order imposed is hereby denied, and it is ordered that the Restaurant Liquor License no. R-12649 issued to Clock Bar, Inc., for premises 400 North Second Street, Harrisburg, Dauphin County, Pa., is suspended for a period of 50 days, effective upon the direction of the Pennsylvania Liquor Control Board, and appellant-licensee is directed to pay the costs.