Joseph Robert MORROW, Appellant,

v.

STATE of Alaska, Appellee.

No. 1599.

Supreme Court of Alaska.

June 18, 1973.

16. AS 12.45.083 (b). This statute was not made retroactive.

George M. Yaeger, Fairbanks, for appellant.

Robert B. Downes, Asst. Dist. Atty., Monroe N. Clayton, Dist. Atty., Fairbanks, John E. Habelock, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

CONNOR, Justice.

Appellant, Joseph Robert Morrow, was charged with selling a ticket in a lottery.[1]

The ticket involved is commonly called a "football card". Such a card lists numerous football games to be played on certain days, from which the purchaser selects from three to ten winning teams. The odds are listed at the bottom of the card. The selection of any winning team is useless unless it beats the opposing team by more than the "point spread" listed to the right of the teams.

The district court concluded that the football predictions were based on skill and, therefore, the scheme was not a lottery. For this reason it dismissed the complaint. The state sought review of that decision. The superior court reversed the dismissal, holding as a matter of law that the card was a ticket in a lottery. Morrow appeals from that decision.

I

■ Lotteries constitute a distinct form of gambling, prohibited by Alaska statute.[2] Where the term "lottery" is not defined by statute, courts generally adopt a definition including three essential elements: consideration, chance, and prize.[3] All three elements must be present for the scheme to constitute a lottery. If one of them is absent, the scheme is not a lottery, regardless of its purpose. If all of the elements are present, the scheme is a lottery, regardless of the purpose of its sponsor.

In the case at bar, consideration and prize are present; the controversy concerns the element of chance.[4]

1. AS 11.60.020:
   "Selling tickets or shares. A person who sells or offers for sale, or has in his possession with intent to sell or offer for sale, or to exchange or negotiate, a ticket or share of a ticket in a lottery, or a writing, token, or other device mentioned in § 10 of this chaper, upon conviction, is punishable . . . ."

2. The separate Alaska statute regulating gambling is AS 11.45.040. This court dealt with the elements of gambling, which are similar to those in a lottery, in State v. Pinball Machines, 404 P.2d 923 (Alaska 1965).

3. A fourth element is occasionally required for a lottery in some jurisdictions: the scheme must also be a public nuisance or a widespread pestilence in order to constitute a lottery. However, courts generally hold that a scheme constitutes a lottery even though it is not a widespread pestilence. State v. Coats, 158 Ore. 122, 74 P.2d 1102, 1105 (1938); Note, Lotteries—Nature and Elements—Regulations, 16 Ore.L.Rev. 164, 168 (1937).

4. Mr. Justice Holmes stated in Dillingham v. McLaughlin, 264 U.S. 370, 373, 44 S. Ct. 362, 363, 68 L.Ed. 742 (1924), "What a man does not know and cannot find

In determining whether chance is present, courts generally employ one of two guides: (1) the pure chance doctrine, under which a scheme is considered a lottery when a person's judgment plays no part in the selection and award of the prize, and (2) the dominant factor doctrine, under which a scheme constitutes a lottery where chance dominates the distribution of prizes, even though such a distribution is affected to some degree by the exercise of skill or judgment. Most jurisdictions favor the dominant factor doctrine.[5]

■ We agree that the sounder approach is to determine the character of the scheme under the dominant factor rule. We think that a game should be classified as one of skill or chance depending on the dominating element, not on the presence or absence of a small element of skill, which would validate the game under the pure chance doctrine. The pure chance doctrine would legalize many guessing contests and other schemes, where only a small element of skill would remove such games from classification as lotteries. This could lead to large-scale evasion of the statutory purpose. In many instances the gambling aspect of a lottery could be cleverly concealed so that ignorant and unwary persons would be enticed into participation before they became aware of the true nature of the scheme.

■ The following aspects are requisite to a scheme where skill predominates over chance. (1) Participants must have a distinct possibility of exercising skill and must have sufficient data upon which to calculate an informed judgment. The test is that without skill it would be absolutely impossible to win the game. (2) Participants must have the opportunity to exercise the skill, and the general class of participants must possess the skill. Where the contest is aimed at the capacity of the general public, the average person must have the skill, but not every person need have the skill. It is irrelevant that participants may exercise varying degrees of skill. Johnson v. Phinney, 218 F.2d 303, 306 (5th Cir. 1955). The scheme cannot be limited or aimed at a specific skill which only a few possess. "[W]hether chance or skill was the determining factor in the contest must depend upon the capacity of the general public—not experts—to solve the problems presented." State ex inf. McKittrick v. Globe-Democrat Publishing Co., 341 Mo. 862, 110 S.W. 2d 705, 717 (1937). (3) Skill or the competitors' efforts must sufficiently govern the result. Skill must control the final result, not just one part of the larger scheme. Commonwealth v. Plissner, 295 Mass. 457, 4 N.E.2d 241 (1936). Where "chance enters into the solution of another lesser part of the problems and thereby proximately influences the final result," the scheme is a lottery. State ex inf. McKittrick v. Globe-Democrat Publishing Co., *supra*. Where skill does not destroy the dominant effect of chance, the scheme is a lottery. Horner v. United States, 147 U.S. 449, 459, 13 S.Ct. 409, 37 L.Ed. 237, 241 (1893). (4) The standard of skill must be known to the participants, and this standard must govern the result. The language used in promoting the scheme must sufficiently inform the partici-

out is chance as to him, and is recognized as chance by the law."

5. 3 F. Wharton, Criminal Law and Procedure § 935, at 62 (Anderson ed. 1957); Morse, The Dominant Element Rule, 58 Dick.L.Rev. 394 (1954); Note, Lotteries —Nature and Elements—Regulations, 16 Ore.L.Rev. 164, 166 (1937); Note, Contest of Skill and the Lottery Laws, 23 Va.L.Rev. 431, 436 (1937). See, e. g., Johnson v. Phinney, 218 F.2d 303, 306 (5th Cir. 1955); Finster v. Keller, 18 Cal.App.3d 843, 96 Cal.Rptr. 241, 246 (1971); People v. Settles, 29 Cal.App.

2d 781, 78 P.2d 274, 277 (1938); State ex inf. McKittrick v. Globe-Democrat Pub. Co., 341 Mo. 862, 110 S.W.2d 705, 717 (1937); State v. Hahn, 105 Mont. 270, 72 P.2d 459, 461 (1937); State v. Steever, 103 N.J.Super. 149, 246 A.2d 743 (1968); Hoff v. Daily Graphic, Inc., 132 Misc. 597, 230 N.Y.S. 360, 363 (1928); State v. Coats, 158 Ore. 122, 74 P.2d 1102, 1106 (1938); Commonwealth v. Laniewski, 173 Pa.Super. 245, 98 A.2d 215 (1953); Seattle Times Co. v. Tielsch, 80 Wash.2d 502, 495 P.2d 1366, 1369 (1972).

pants of the criteria to be used in determining the results of the winners. The winners must be determined objectively. Note, "Contest and the Lottery Law," 45 Harv.L.Rev. 1196, 1216 (1932).

## II

Turning to the case at bar, we feel that the question of which element predominates—skill or chance—is for the trier of fact to determine. We cannot, as a matter of law, conclude that the football pool in this case is not a lottery, because we do not have evidence before us as to the relevant importance of chance and skill. Appellant is entitled to a trial on the factual issue of the predominance of chance or skill, and the state has the burden of showing that chance predominates.[6]

Therefore, we reverse and remand to the superior court for further remand to the district court for proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

FITZGERALD, J., not participating.

---

6. Commonwealth v. Laniewski, 173 Pa. Super. 245, 98 A.2d 215 (1953) and State v. Steever, 103 N.J.Super. 149, 246 A.2d 743 (N.J.Super.Ct.1968), relied upon by the superior court, are distinguishable. In each of those cases there had been a trial on the merits. Here there was none. Without established facts it is not possible to conclude that the scheme was a lottery as a matter of law.