# Palmer *v.* Central Board of Education of Pittsburg, Appellant.

*School law—School board—Building committee—Approval of action of committee—Contract—Architect—Submission of plans—Equity—Injunction—Inadequate remedy at law.*

A school board having decided to erect a school building, appointed a committee to take charge of the work, authorizing it among other things to select, subject to the approval of the board, a competent person as architect. The committee subsequently reported to the board

that it had determined to select an architect by competition, and for this purpose, to employ a competent professional adviser to prepare instructions to the competing architects as to the rules governing competition and the terms upon which the successful competitor, if approved by the board, was to be engaged. This report was approved by the board. The committee thereupon with the aid of its professional adviser prepared instructions to the competitors, who were limited to a specific number. These instructions were never formally approved by the board. The instructions stated that a fair examination of each plan would be made and a choice made by the committee; that if the first choice by the committee should fail of the board's approval, that the others would be reported in the order of their merit and according to the judgment of committee, until a selection should be reached with the board's approval. The several architects invited submitted their plans, and the committee made a selection of one of the plans, and reported to the board. The report was not approved by the board. Subsequently without any further action having been taken, the board having reorganized appointed a new building committee with authority to procure plans in open competition from all competent architects. Under this scheme an architect was duly elected. Thereupon three of the competitors under the old scheme filed a bill in equity to compel the board to proceed under the old plan, and make a selection in accordance therewith. *Held,* (1) that it was not necessary for the board to have approved of the instructions formulated by the committee; (2) that a contract existed between the board and the competing architects; and (3) that equity had jurisdiction, inasmuch as there was no adequate remedy at law.

In such a case the jurisdiction of equity is not affected by the fact that the unsuccessful competitors were each to receive a specific sum as full compensation; inasmuch as the parties complaining in the bill were not in the position of unsuccessful competitors.

Argued March 3, 1908. Appeal, No. 44, Oct. T., 1908, by defendant, from decree of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 694, In Equity, on bill in equity in case of George C. Palmer and Henry F. Hornbostel, partners as Palmer & Hornbostel, Emlyn Stewardson and James T. Jamieson, partners as Cope & Stewardson, and Cass Gilbert v. The Central Board of Education of the City of Pittsburg. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before SWEARINGEN, P. J., and CARNAHAN and COHEN, JJ.

The facts are stated in the opinion of the Supreme Court.

The court below found the following conclusions of law :

2. It was a lawful exercise of the powers of said central board to pass the resolution of February 13, 1906, whereby it determined to erect a new central high school building, created a special committee to have charge of the erection of the proposed building, and authorized it to select, subject to the approval of the board, an architect, and to have preliminary plans prepared. It was equally a lawful exercise of the powers of said central board to pass the resolution of May 8, 1906, adopting the report of said building committee (finding of fact 5), whereby said Central Board of Education determined to select an architect by competition, selected Warren P. Laird as professional adviser, to the building committee, and prescribed as part of his duties the preparation of instructions to competing architects, of regulations governing the conduct of the competition and of the terms under which the successful architect was to be engaged.

3. It was likewise competent for said building committee and said adviser to prepare the program of competition (finding of fact 6), and to invite the architects to enter into competition, as set forth in finding of fact 7. These acts were within the scope of the authority conferred upon the building committee and the adviser, under the resolutions of February 13 and May 8, 1906 ; and thus they became and were the acts of the Central Board of Education itself.

4. The aforesaid invitation to enter the competition and the acceptance thereof by said architects constituted a contract between said Central Board of Education and said competing architects, whereby said architects, on their part, obligated themselves to each prepare a design for said high school building and to submit the same in competition, and whereby the said central board, on its part, undertook to consider the said designs and to pass upon the same in accordance with the provisions of the program (exhibit No. 1), paragraphs Nos. 40, 41, 42 and 43. There was ample consideration to support this contract. On the part of said central board, it was to receive the expert information which it needed in the performance of a most important public duty. These architects, on their part, under-

took to use their skill, judgment and experience in the preparation of designs for a school building, for the benefit of said central board and at its request,—things which, prior to the agreement, they were not legally bound to do. This consideration is sufficient: Newhall v. Paige et al., 76 Mass. 366; Devecmon v. Shaw, 69 Md. 199; Hamer v. Sidway, 124 N. Y. 538 (27 N. E. Repr. 256).

Of course these architects had the hope and expectation that some one of them would obtain the valuable prize of being the architect of this building; and this possibility is a sufficient consideration: Molyneaux v. Collier, 17 Ala. 46.

5. Whether or not some one of these competitors is entitled to be chosen the architect is a question which is not now before us. It would seem that the power of the central board to approve a choice of the committee implies the power to reject all designs. The presumption is that the members of the board will perform their duty, under their oaths of office and with due fidelity to the constituencies which they represent. With their discretion we have no disposition to even attempt to interfere, even if we could do so. But when a contract is submitted, such as we have found, and a breach of it is shown, we have a case presented which calls for appropriate remedy, such as the law provides, and it is equally our duty to apply the remedy under proper complaint.

6. Pursuant to the aforesaid contract, these competing architects, including the plaintiffs, prepared and submitted their designs, and the said building committee selected one of them and so reported to the central board. But the board did not approve the selection, though it did not formally reject the choice; and then it went no further. It has now attempted to abandon the method of choosing an architect, prescribed in the resolution of May 8, 1906, by adopting another and a different method altogether. This was a breach of the aforesaid contract between the Central Board of Education and the competing architects. Having performed their part of the contract, as far as they could, these architects, including the plaintiffs, are entitled to the fruit of their labors, which is that the competition, which was lawfully instituted by the Central Board of Education, shall be completed according to its terms.

It is no matter that the Central Board of Education has since reorganized and changed its committee. The relations between the board and these architects are contractual, and a municipal corporation, or division, can no more avoid the obligations of its lawful contracts than can an individual party.

7. The very nature and subject-matter of the controversy are such that there can be no adequate, convenient or sufficient remedy at law for these plaintiffs. What rule could any court give to a jury, whereby it could adequately assess the damages? Even the $750 which, it was stipulated, should be paid to each of the competitors, whose designs were not accepted, cannot be paid until there is a final disposition of the competition. But this is only a small part of the subject-matter of this contract, in which these plaintiffs are interested. It seems to us that there is jurisdiction in equity, and only in equity, to afford adequate, convenient and sufficient relief: Appeal of Brush Electric Co., 114 Pa. 574; Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

The court entered the following decree:

And now, to wit: January 2, 1908, this matter came on for hearing upon bill, answer and replication filed, the testimony taken at the preliminary hearing, and the findings of fact and conclusions of law of the court thereon made, being, by agreement of counsel, taken as though made upon final hearing, and thereupon upon consideration thereof, it is ordered, adjudged and decreed that the said defendant the Central Board of Education of the city of Pittsburg be enjoined and restrained from proceeding to award the plan for the construction of a high school for the city of Pittsburg on a lot on Forbes street, acquired from Hon. Christopher Magee, and to select an architect for the construction thereof outside of the nine different architects who have entered into competition therefor, and whose names are set forth in the foregoing bill, until the plans submitted by said architects have been acted upon in the manner set forth in the resolution of the said board of May 8, 1906, attached to plaintiffs' bill and marked Exhibit " A."

Errors assigned were (1–6) conclusions of law as above, and (7) decree of the court.

*James C. Gray* and *W. J. Brennen,* with them *J. Scott Ferguson, Clarence Burleigh* and *Wm. A. Challener,* for appel-lant.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* for ap-pellees.

OPINION BY MR. JUSTICE STEWART, April 20, 1908:

The Central Board of Education of the city of Pittsburg, by resolution passed February 13, 1906, decided upon the erection of a new high school building, and appointed a com-mittee of nine of its members to take charge of the work. This committee was authorized, among other things, to select, subject to the approval of the board, a competent person as architect. Later on, May 8, 1906, the committee submitted to the board a report, in which it was stated that the commit-tee had determined to select the architect by competition, and to employ a competent expert as professional adviser to pre-pare instructions to the competing architects as to the rules governing the conduct of the competition, and the terms un-der which the successful competitor, if approved by the board, was to be engaged. This report was the same day unani-mously approved. The committee determined to limit the number of competitors to nine, these to be chosen by the aid of the expert assistant from among architects of highest pro-fessional standing. The instructions to the competitors, sub-sequently prepared by the expert assistant, with the approval of the committee, provided that examination of all the plans submitted was to be made first by the expert assistant, who was required to report to the committee his choice of the de-signs submitted; and that the committee was then to care-fully examine his report and make selection of the design it decided to be the best, and award the prize—the appointment as architect—to the author of the plans selected, subject to the approval of the board. A further instruction was that in case the board disapproved of the committee's choice, the commit-tee would then select from the remaining designs that one which in its judgment was the best, and repeat the above pro-cedure with respect to this design and its author; and in case the second selection by the committee failed of approval by

the board, the committee would then proceed in like manner with each of the remaining designs, taken in the order of their merit as this might be regarded by the committee, until the board should finally approve the selection of one of the competing architects. Each of the nine architects submitted plans and thus engaged in competition for the prize. These several plans having been examined, the committee on November 22, 1906, made its selection, and reported it to the board. For reasons which we need not inquire into, this report failed of approval by the board, and was held over. Without any further action having been taken with respect to the report, on February 12, 1907, the board having reorganized, appointed a new building committee with authority to procure plans in open competition from all competent architects, and to select from those submitted the plan it deemed most suitable for the purpose, and to proceed to obtain proposals for the erection of the building in accordance with the plans selected. This new committee, on June 4, 1907, reported that it had selected a certain plan, giving the name of the author. By resolution passed the same day this report was approved, and the author of the plan was elected architect. Thereupon three of the competing architects under the original scheme filed the bill in this case setting forth the facts as we have stated them, and asking that the Central Board of Education be enjoined from rescinding and ignoring the plans of competition adopted under the resolution of May 8, 1906, and that it be required to proceed to consider the plans submitted by the competing architects at the invitation and request of the earlier committee, and make a selection therefrom, in accordance with the rules adopted by said committee. The answer puts in issue no material fact. The proceeding resulted in a decree enjoining the defendants from selecting plans and choosing an architect until the plans submitted by the plaintiffs and other architects who engaged in the first competition, had been acted upon in the manner set forth in the resolution of the board of May 8, 1906. This appeal followed.

The assignments of error relate exclusively to the conclusions of law by the court, and raise but two questions, namely (1) did any contract relation between the competing architects and the Board of Education result from the submission of

plans by the former under the resolution of the board May 8, 1906? and (2) if such relation did result, have the plaintiffs an adequate remedy at law for any breach of the contract? The case is free from difficulty. The report of the original building committee of the method it had adopted for the selection of a plan and architect was full and explicit. While it did not set out in detail the instructions to be given those willing to engage in the competition, it did expressly indicate that instructions were to be given, by whom they were to be prepared, and what they were to embrace. One of the duties imposed upon the professional expert assistant, was, in the language of the report, to prepare instructions to the competing architects of regulations governing the conduct of the competition, and the terms under which the successful architect was to be engaged. The instructions thus required of the expert assistant were prepared, and, with the approval of the committee, were furnished to those who proposed to compete. They specifically stated in detail just how the final selection was to be made, promised the competitors a fair examination of each plan submitted, and provided that in case the first choice by the committee should fail of the board's approval, that the others would be reported in the order of their merit according to the judgment of the committee, until a selection would be reached with the board's approval. Had these instructions appeared in the report of the committee, approved by the board, it is admitted that any submission of plans thereunder would have established a contract relation between the board and the competing parties; but inasmuch as they were the work of the committee, not passed upon specifically by the board, it is argued that they were without binding effect. In other words, the contention is that the instructions went beyond what the committee was empowered to do in this behalf and were nugatory. In this view we cannot concur. So far as we can see, there is absolutely nothing in the instructions not fairly embraced within the authority given the committee. Competition was authorized and provided for. This method, approved by the board, necessarily implied an examination of the plans to be submitted, and a fair opportunity to contest for the premium. The instructions went no further than to express in terms what the law would imply from the method

itself. The order in which the plans were to be considered, in case the first selection of the committee failed of the board's approval, was mere matter of detail, in no wise inconsistent with the scheme as approved by the board, but in entire harmony therewith. Full authority as to the determination of these details was given the committee. The adoption of the report by the board was a full authorization for the committee to proceed in the way it had recommended, and thereafter what was done by the committee in accordance with the recommendations contained in the report was the action of the board itself. Under any fair and reasonable method of selection by competition, the chief inducement for anyone to take upon himself the labor and expense incident to the submission of plans, would be the chance that upon a fair and impartial examination his plan might win acceptance. Disappointment in this regard after labor expended and expense incurred, under such circumstance as we have here, constitutes not only a breach of good faith, but a breach of contract resting not on doubtful terms, but on expressly admitted facts, from which an unmistakable legal obligation resulted.

That a common-law action for breach of such a contract would afford no adequate remedy, we think obvious. What could be recovered in such an action? Certainly not compensation for the thing lost. What the plaintiffs lost was the chance of having some one of the plans submitted win the prize, and this was the inducement to the expenditure of labor involved in the preparation and the submission of plans. But how is compensation for such a loss to be measured? The contract itself provides no method for determining the damages, and the law furnishes no standard. To recover anything more than nominal damages in a common-law action, actual, substantial injury would have to be shown, and in the very nature of the case that would be impossible here. To show actual loss, plaintiffs would be required to show affirmatively at least a reasonable probability that some one of the plans submitted would, had they been examined, have received the approval of the board. Since the acceptance of any of the plans rested ultimately in the discretion of the board, this would be impossible. If we regard the plaintiffs singly, as independent competitors, the difficulty is only increased by a multiplication

of the chances of missing the prize. But it is argued that recovery could be had for the value of the plans and specifications submitted. This is a mistaken view. Plaintiffs have not lost their plans and specifications. They are still theirs as much as ever. If the time and labor expended on them were solely to secure a chance, how can the plans be of value except a reasonable probability be shown that the chance would have been realized? It is impossible to disassociate the plans from the chance in determining value. So much was ruled in Adams Express Company v. Egbert, 36 Pa. 360, a case not exactly parallel with this, but involving the same principle. In saying that the contract itself provided no measurement of damages, we have not overlooked the fact that there is a provision in the contract that the unsuccessful competitors were each to receive $750 as full compensation. Manifestly this is without application here. The parties complaining are not in the position of unsuccessful competitors; their complaint is that there was no competition. Admittedly there was none, and until there shall be by a fair and impartial examination of the plans submitted, none of those competing can be said to be unsuccessful competitors. We thus resolve the two questions in the case against the appellants. The decree entered simply restrains the appellants from awarding the plans for the construction of the school building, and selecting an architect to superintend the construction of the same, outside of the nine architects who had entered into competition, until the plans submitted by said architects shall have been acted upon in the manner set forth in the resolution of the board, May 8, 1906. The decree exacts nothing of the appellants beyond what good faith requires and what the plaintiffs had a right to demand.

Decree affirmed and appeal dismissed at the costs of the appellants.