388 So.2d 1343 (1980)
CHAMPAGNE CHRYSLER-PLYMOUTH, INC., Appellant,
v.
David GILES, Appellee.
No. 79-1933.
District Court of Appeal of Florida, Third District.
October 14, 1980.
*1344 Lane, Mitchell & Harris and Byron B. Mathews, Jr., Miami, for appellant.
Charles F. Atwood, III, Miami, for appellee.
Before HUBBART, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
For a number of weeks prior to mid-January 1978, Champagne Chrysler-Plymouth, Inc. advertised, in a thirty-second spot commercial on a Saturday television program called Miami All Star Bowling, that it was giving away a new Plymouth Arrow to anyone who bowled a 300 game on the televised program that day. Giles unquestionably was aware of this advertising. Apparently believing that Champagne's offers could only be withdrawn by a revocation commensurate to the offer itself, Giles, in mid-February 1978, put up his pin money and entered the week-long tournament which culminated with the finals carried, as usual, on the Miami All Star Bowling television show of February 17, 1978. Giles qualified for the finals and, as the reader may have already surmised, threw twelve strikes in a row for a 300 game. Although otherwise rewarded with cash prizes, free Pepsi and the like, Giles called upon Champagne for his just desserts.
Not bowled over by this request, Champagne responded that it had made no offer of an automobile on February 17 and, for that matter, had not been offering such a prize for over a month of Saturdays. Its position, simply stated, was that Giles was aiming at the wrong pocket. Giles sued.
Champagne's defense was that its offer of a prize on and for a particular Saturday television show meant that it made an offer good for that show only. Since no such offer was made on February 17, the day Giles rolled a 300 game, Champagne had no liability. Giles responded that Champagne had placed mimeographed flyers and printed posters containing its offers in nearly every bowling alley, and some of this advertising was still posted as of February 17. The trial court, viewing Champagne's earlier offer unrevoked and outstanding as of February 17, and there being no doubt that Giles rolled a 300 game, entered summary judgment as to liability in favor of Giles.
Its bubble thus burst, Champagne appealed. We agree with Champagne that the mimeographed flyer offering a car as a prize for any 300 game bowled on the television *1345 program, even if it remained posted on February 17, 1978, expired by its own terms.[1] In the case of a unilateral contract:
"as the obligation is, before acceptance, on one side only, the proposer being bound to comply with his proposal, while the other party is under no obligation, and under no peril until acceptance, the provision of the offer as to time of acceptance is viewed with strictness." C.W. Kistler v. Hotel Martinique, 44 So.2d 288, 291 (Fla. 1950) (emphasis in original).
See also Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539 (1947).
The television commercials and printed posters present a different problem. The present state of the record does not reflect whether these were unilateral offers limiting the time of acceptance by their express terms or were offers requiring revocation. While the trial court was correct that there was no genuine issue of material fact that appropriate revocation did not occur, the issue as to whether revocation was required remained. If, in fact, the television commercials were unilateral contracts, it would not have been necessary for Champagne to take any steps to revoke the offers made by it on prior television programs, since these offers would have expired by their own terms on the dates made and would not have been outstanding as of February 17, 1978. Since the record contains no clear and undisputed evidence of the words used on the television commercials, or the words used on the cardboard poster (purportedly still displayed on February 17) and thus does not eliminate the distinct possibility that these were unilateral contracts requiring no revocation, it was error for the trial court to enter summary judgment for Giles. In this respect, as well as in respect to the issue of whether Giles believed that Champagne's offer of a car was outstanding as of February 17, we find that there were genuine issues of material fact still extant at the time of the entry of summary judgment.
Accordingly, we reverse the summary judgment entered in favor of Giles and remand this cause for further proceedings consistent with this opinion.
Reversed.
NOTES
[1] The only flyer contained in the record before us, presumably an exemplar, offered the car for the show of Saturday, December 31, 1977.