561 A.2d 1248

**Amos COBAUGH, Appellee,**

v.

**KLICK–LEWIS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1989.

Filed July 14, 1989.

Robert M. Frankhouser, Jr., Lancaster, for appellant.
Wiley P. Parker, Lebanon, for appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

WIEAND, Judge:

On May 17, 1987, Amos Cobaugh was playing in the East End Open Golf Tournament on the Fairview Golf Course in Cornwall, Lebanon County. When he arrived at the ninth tee he found a new Chevrolet Beretta, together with signs which proclaimed: "HOLE–IN–ONE Wins this 1988 Chevrolet Beretta GT Courtesy of KLICK–LEWIS Buick Chevy Pontiac $49.00 OVER FACTORY INVOICE in Palmyra." Cobaugh aced the ninth hole and attempted to claim his prize. Klick–Lewis refused to deliver the car. It had offered the car as a prize for a charity golf tournament sponsored by the Hershey–Palmyra Sertoma Club two days earlier, on May 15, 1987, and had neglected to remove the car and posted signs prior to Cobaugh's hole-in-one. After Cobaugh sued to compel delivery of the car, the parties entered a stipulation regarding the facts and then moved for summary judgment. The trial court granted Cobaugh's motion, and Klick–Lewis appealed.

Our standard of review is well established. A motion for summary judgment may properly be granted only if the moving party has shown that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *French v. United Parcel Service*, 377 Pa.Super. 366, 371, 547 A.2d 411, 414 (1988); *Thorsen v.*

*Iron and Glass Bank,* 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). Summary judgment should not be entered unless a case is clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983); *Dunn v. Teti,* 280 Pa.Super. 399, 402, 421 A.2d 782, 783 (1980).

The facts in the instant case are not in dispute. To the extent that they have not been admitted in the pleadings, they have been stipulated by the parties. Therefore, we must decide whether under the applicable law plaintiff was entitled to judgment as a matter of law.

■ An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. Restatement (Second) of Contracts § 24; 8 P.L.E. Contracts § 23. Consistent with traditional principles of contract law pertaining to unilateral contracts, it has generally been held that "[t]he promoter of [a prize-winning] contest, by making public the conditions and rules of the contest, makes an offer, and if before the offer is withdrawn another person acts upon it, the promoter is bound to perform his promise." Annotation, Private Rights and Remedies Growing Out of Prize-winning Contests, 87 A.L.R.2d 649, 661. The only acceptance of the offer that is necessary is the performance of the act requested to win the prize. *Id.* See also: *Robertson v. United States,* 343 U.S. 711, 72 S.Ct. 994, 96 L.Ed. 1237 (1952) ("The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract."); 17 C.J.S. Contracts § 46.

■ The Pennsylvania cases which have considered prize-winning contests support the principle that an offer to award a prize in a contest will result in an enforceable contract if the offer is properly accepted by the rendition of the requested performance prior to revocation. See: *Olschiefsky v. Times Publishing Co.,* 23 D. & C.2d 73 (Erie 1959) (overruling demurrer to action against newspaper for failure to award prize to winner of puzzle contest); *Holt v.*

*Wood, Harmon & Co.*, 41 Pitt.L.J. 443 (1894) (holding offer to award house to person submitting name selected for new housing development resulted in binding contract). See also: *Aland v. Cluett, Peabody & Co.*, 259 Pa. 364, 103 A. 60 (1918); *Palmer v. Central Board of Education of Pittsburg*, 220 Pa. 568, 70 A. 433 (1908); *Trego v. Pa. Academy of Fine Arts*, 2 Sad. 313, 3 A. 819 (1886); *Vespaziani v. Pa. Dept. of Revenue*, 40 Pa.Cmwlth 54, 396 A.2d 489 (1979).

■ Appellant argues that it did nothing more than propose a contingent gift and that a proposal to make a gift is without consideration and unenforceable. See: Restatement (Second) of Contracts § 24, Comment b. We cannot accept this argument. Here, the offer specified the performance which was the price or consideration to be given. By its signs, Klick–Lewis offered to award the car as a prize to anyone who made a hole-in-one at the ninth hole. A person reading the signs would reasonably understand that he or she could accept the offer and win the car by performing the feat of shooting a hole-in-one. There was thus an offer which was accepted when appellee shot a hole-in-one. Accord: *Champagne Chrysler–Plymouth, Inc. v. Giles*, 388 So.2d 1343 (Fla.Dist.Ct.App.1980) (bowling contest); *Schreiner v. Weil Furniture Co.*, 68 So.2d 149 (La.App. 1953) ("Count-the-dots" contest); *Chenard v. Marcel Motors*, 387 A.2d 596 (Me.1978) (golf tournament); *Grove v. Charbonneau Buick–Pontiac Inc.*, 240 N.W.2d 853 (N.D. Sup.Ct.1976) (golf tournament); *First Texas Savings Assoc. v. Jergins*, 705 S.W.2d 390 (Tx.Ct.App.1986) (free drawing).

■ The contract does not fail for lack of consideration. The requirement of consideration as an essential element of a contract is nothing more than a requirement that there be a bargained for exchange. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 541, 526 A.2d 1192, 1195 (1987); *Commonwealth Dept. of Transp. v. First Nat'l Bank*, 77 Pa. Cmwlth. 551, 553, 466 A.2d 753, 754 (1983). Consideration confers a benefit upon the promisor or causes a detriment to the promisee. *Cardamone v. University of Pittsburgh*,

253 Pa.Super. 65, 72 n. 6, 384 A.2d 1228, 1232 n. 6 (1978); *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 167, 199 A.2d 540, 543 (1964). By making an offer to award one of its cars as a prize for shooting a hole-in-one at the ninth hole of the Fairview Golf Course, Klick–Lewis benefited from the publicity typically generated by such promotional advertising. In order to win the car, Cobaugh was required to perform an act which he was under no legal duty to perform. The car was to be given in exchange for the feat of making a hole-in-one. This was adequate consideration to support the contract. See, e.g.: *Las Vegas Hacienda, Inc. v. Gibson*, 77 Nev. 25, 359 P.2d 85 (1961) (paying fifty cents and shooting hole-in-one was consideration for prize). See also: *First Texas Savings v. Jergins, supra* (enforcing duty to award prize in free drawing where only performance by plaintiff was completing and depositing entry form).[1]

1. The issue of an illegal contract, as the author of the dissent concedes, was not raised by appellant in the trial court or on appeal. Indeed, it was not pleaded as "new matter" as required by Pa.R.C.P. 1030 and was not the subject of evidence or argument at trial.

Even if, as the dissent contends, this Court may act sua sponte to refuse enforcement of an illegal contract, it should not do so unless the illegality is clear. It is not clear in this case that to offer an automobile as a prize for a hole-in-one during a charity golf tournament was to introduce illegal gambling to the tournament. Courts of other jurisdictions have found similar offers legal and enforceable. See: *Las Vegas Hacienda, Inc. v. Gibson, supra* (contest to award prize to golfer who, having paid fee, scored a hole-in-one was not gambling and, therefore, created valid and enforceable contract). See also: *State v. American Holiday Ass'n, Inc.*, 151 Ariz. 312, 727 P.2d 807 (1986) (discussing cases).

Finally, there was no evidence in this case that an element of chance was the dominant factor in shooting the hole-in-one. See: *Commonwealth v. Laniewski*, 173 Pa.Super. 245, 98 A.2d 215 (1953) (chance must be dominant factor). Even if this Court could legitimately consider the "facts" which the dissent introduces from a popular magazine, those statistics demonstrate that a professional golfer is generally twice as likely to shoot a hole-in-one as an amateur golfer. Under these circumstances, it cannot be said that skill is "almost an irrelevant factor." See: *Las Vegas Hacienda, Inc. v. Gibson, supra*, 77 Nev. at 29–30, 359 P.2d at 87 (where expert testified that "a skilled player will get it (the ball) in the area where luck will take over more often than an unskilled player," there was sufficient evidence to sustain a finding that the shooting of a hole-in-one was a feat of skill).

■ There is no basis for believing that Cobaugh was aware that the Chevrolet automobile had been intended as a prize only for an earlier tournament. The posted signs did not reveal such an intent by Klick–Lewis, and the stipulated facts do not suggest that appellee had knowledge greater than that acquired by reading the posted signs. Therefore, we also reject appellant's final argument that the contract to award the prize to appellee was voidable because of mutual mistake. Where the mistake is not mutual but unilateral and is due to the negligence of the party seeking to rescind, relief will not be granted. *Rusiski v. Pribonic*, 326 Pa.Super. 545, 552, 474 A.2d 624, 627 (1984), *rev'd on other grounds*, 511 Pa. 383, 515 A.2d 507; *McFadden v. American Oil Co.*, 215 Pa.Super. 44, 53–54, 257 A.2d 283, 288 (1969).

In *Champagne Chrysler–Plymouth, Inc. v. Giles, supra,* a mistake similar to that made in the instant case had been made. There, a car dealer had advertised that it would give away a new car to any bowler who rolled a perfect "300" game during a televised show. The dealer's intent was that the offer would continue only during the television show which the dealer sponsored and on which its ads were displayed. However, the dealer also distributed flyers containing its offer and posted signs advertising the offer at the bowling alley. He neglected to remove from the alley the signs offering a car to anyone bowling a "300" game, and approximately one month later, while the signs were still posted, plaintiff appeared on a different episode of the television show and bowled a perfect game. The dealer refused to award the car. A Florida court held that if plaintiff reasonably believed that the offer was still outstanding when he rolled his perfect game, he would be entitled to receive the car. See also: *Grove v. Charbonneau Buick–Pontiac Inc., supra* (car dealer required to award prize to participant in 18–hole golf tournament played on nine-hole golf course where it had offered to award a car "to the first entry who shoots a hole-in-one on Hole No. 8" and plaintiff aced the hole marked No. 8 while driving from the seventeenth tee).

■■■ It is the manifested intent of the offeror and not his subjective intent which determines the persons having the power to accept the offer. Restatement (Second) of Contracts § 29. In this case the offeror's manifested intent, as it appeared from signs posted at the ninth tee, was that a hole-in-one would win the car. The offer was not limited to any prior tournament. The mistake upon which appellant relies was made possible only because of its failure to (1) limit its offer to the Hershey–Palmyra Sertoma Club Charity Golf Tournament and/or (2) remove promptly the signs making the offer after the Sertoma Charity Golf Tournament had been completed. It seems clear, therefore, that the mistake in this case was unilateral and was the product of the offeror's failure to exercise due care. Such a mistake does not permit appellant to avoid its contract.

Affirmed.

POPOVICH, J., filed a dissenting opinion.

POPOVICH, Judge, dissenting:

"Golf ... is ... a game of relaxed recreation and limitless enjoyment for millions and a demanding examination of exacting standards ..." (Robert Trent Jones, Preface of *The Golf Course*, Geoffrey S. Cornish and Ronald E. Whitten, The Rutledge Press, Revised Edition, 1987). In short, golf—as demonstrated by the vast majority of its practitioners who never have and never will score a round at par—is a sport requiring precise skills.

Making a hole-in-one, however, is such a fortuitous event that skill is almost an irrelevant factor. Because of that fact (an element of chance), combined with the payment of an entry fee to the East End Open Golf Tournament (consideration) and the automobile prize (reward), my view is that the necessary elements of gambling are present thus rendering the contract *sub judice* unenforceable as violat-

ing the Commonwealth's policy against gambling.[1] As our Supreme Court stated eighty-five years ago in *Davis v. Fleshman*, 245 Pa. 224, 91 A. 489 (1914):

It is equally well settled in this jurisdiction that all mere wagering contracts are illegitimate transaction which the law declares void and which will not be enforced at the insistence of either party to the contract. It will not aid the winner to recover from the loser the amount of the stake, and it will not give assistance to the loser to recover back the amount of the bet after the transaction has been closed. It will leave the parties as it finds them. The law will not attempt to settle disputes arising between gamblers by enforcing their alleged rights arising out of an illegal transaction.

I raise this issue *sua sponte* since we have no jurisdiction to enforce a contract in violation of public policy. *In re Estate of Pedrick*, 505 Pa. 530, 534, 482 A.2d 215, 222 (1984) (public policy dictates court must raise "unclean hands" *sua sponte*); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985) (propriety of summary judgment raised *sua sponte*).

By couching this transaction in terms of a unilateral contract, the majority seems to opine that scoring a hole-in-one is an act of skill which a golfer can choose to undertake.[2] The truth is quite the opposite.

While every golfer dreams of the day when his ball flawlessly flies into the cup, few ever experience the thrill of a hole-in-one. So few in fact that "aceing" a hole is truly an act of "luck" not skill. Consider the following statis-

**1.** Under Pennsylvania law, the three elements of gambling are consideration, a reward and an element of chance. *Commonwealth v. Weisman*, 331 Pa.Super. 31, 479 A.2d 1063 (1984); *In re: Gaming Devices Seized at American Legion Post No. 109*, 197 Pa.Super. 10, 176 A.2d 115 (1961). Illegal lotteries, gambling and bookmaking are strictly prohibited as delineated in 18 Pa.C.S.A. §§ 5512 (lotteries), 5513 (gaming devices, gambling) and 5514 (pool selling, bookmaking).

**2.** "In order to win the car, Cobaugh was required to perform an act which he was under no legal duty to perform. The car was to be given in exchange for the feat of making a hole-in-one." Majority Op. at 592.

tics:[3] In 1988, approximately 21.7 million golfers played 434 million rounds of golf with only 34,469 holes-in-one being reported to the United States Golf Association. *Golf Digest,* using figures amassed since 1952, estimates that a golfer of average ability playing a par–3 hole of average difficulty has a mere 1 in 20,000 chance of aceing the hole.

While the chances increase for a professional golfer, the possibility of a hole-in-one, even for the world's best players, is still remote. Last year only 22 holes-in-one were recorded during the Professional Golf Association's tournament schedule.[4] With approximately 300 touring professionals playing in 47 tournaments (four rounds per tournament, four par–3's per round), the odds increased to approximately 1 in 10,000.

However, even at 10,000 to 1, the professional's chances of aceing a hole are more akin to an act of God than a demonstration of skill. Clearly, the possibility of a hole-in-one is sufficiently remote to qualify as the necessary gambling requirement of an element of chance.

Since all of the elements of gambling are present, I see no reason to enforce this so-called unilateral contract, rather I would find that an unenforceable gambling contract was created. While I recognize that there are a variety of socially acceptable forms of gambling indulged in by the public for the most charitable of purposes and the worthiest of causes, they are nonetheless illicit under Pennsylvania law. Dollar raffle tickets for the benefit of a hospital or a Little League Baseball Association are bought and sold innocuously and routinely, and, yet, raffles constitute unsanctioned gambling. Only recently, under strict control, has bingo, a popular and social form of gambling been legalized. 10 Pa.C.S.A. § 301 *et seq.* See also 4 Pa.C.S.A. § 325.101 *et seq.* (horse racing); 72 Pa.C.S.A. § 3761–1 *et*

3. The statistics are courtesy of Lois Hains, Assistant Editor, and Hope Johnson, Chief of Research, *Golf Digest,* the foremost comprehensive periodical on the sport of golf.

4. For the record, we note that female professional golfers playing in Ladies Professional Golf Association events had 20 holes-in-one in 1988.

*seq.* (state lottery). Millions of citizens spend billions of dollars each year on sports betting in office pools or with the local bookmaker. However, only in one state, Nevada, is it legal so to do.

Thus, when such a rare case as this comes into court, it may be difficult to re-assert a public policy which everyday is violated by common experience, especially, such as here, where there probably was no thought of gambling or "breaking the law." Nevertheless, we cannot usurp the role of the legislature or turn our heads away from the fundamental substance of this transaction: it is a contract, a contract covering the context of gambling. Hence, it is unenforceable no matter how much condoned or indulged.