589 A.2d 1155

Rebecca A. KELLY, a minor, by her parents and natural guardians, Jodie L. KELLY and David L. Kelly; and Jodie L. Kelly and David L. Kelly, in their own right,

v.

LUTHERAN CHURCH IN AMERICA, a corporation; the Central Pennsylvania Synod of the Lutheran Church in America, a corporation; St. Luke's Evangelical Lutheran Church; St. John's Evangelical Lutheran Church of Black Township; and Sanner & Hauger Cemetery Association, Inc., a/k/a Sanner Cemetery Association; Norman B. Hay; Wilber Z. Snyder; David T. Snyder; Dale Hauger; Harry Romesberg; and Nevin Hay.

Appeal of ST. LUKE'S EVANGELICAL LUTHERAN CHURCH (Three Cases).

Appeal of ST. LUKE'S EVANGELICAL LUTHERAN CHURCH OF BLACK TOWNSHIP.

Rebecca A. KELLY, a minor, by her parents and natural guardians, Jodie L. KELLY and David L. Kelly; and Jodie L. Kelly and David L. Kelly, in their own right, Appellants,

v.

LUTHERAN CHURCH IN AMERICA, a corporation; the Central Pennsylvania Synod of the Lutheran Church in America, a corporation; St. Luke's Evangelical Lutheran Church; St. John's Evangelical Lutheran Church of Black Township; and Sanner & Hauger Cemetery Association, Inc., a/k/a Sanner Cemetery Association; Norman B. Hay; Wilber Z. Snyder; David T. Snyder; Dale Hauger; Harry Romesberg; and Nevin Hay, Appellees.

Appeal of Harry ROMESBERG.

Superior Court of Pennsylvania.

Argued Oct. 17, 1990.

Filed April 12, 1991.

Anita B. Folino, Pittsburgh, for appellant (at No. 432) and for Kelly, appellees (at Nos. 429, 430, 431 and 551).

Michael L. Magulick, Pittsburgh, for Lutheran Church, appellee.

Richard L. McMillan, Pittsburgh, for Cent. Pa. Synod of the Lutheran Church, appellee.

Before ROWLEY, WIEAND and FORD ELLIOTT, JJ.

WIEAND, Judge:

In this action to recover damages for personal injuries sustained by a child when a cemetery tombstone fell on her, the trial court entered summary judgment in favor of two defendants, the Lutheran Church in America (LCA) and the Central Pennsylvania Synod of the Lutheran Church in America (the Synod). In this appeal by the plaintiffs and several other defendants, it is contended that LCA and the Synod, as parent bodies, were subject to liability for the alleged negligent maintenance of the offending church cemetery. After careful review, we agree with the trial court that LCA and the Synod had no right to control the manner in which the cemetery was maintained and affirm the court's order entering summary judgment.

The case arose out of an accident which occurred on October 24, 1984, on property known as the "Sanner Cemetery." Rebecca Kelly, a minor, sustained injuries when a tombstone fell on her while she was playing in the cemetery. Thereafter, her parents, David and Jodie Kelly, filed an action to recover damages as a result of their daughter's injuries. The defendants named in the action included: the Sanner and Hauger Cemetery Association (Cemetery Association); six named members of the Cemetery Association [1]; St. John's Evangelical Lutheran Church (St. John's); St. Luke's Evangelical Lutheran Church (St. Luke's); the Central Pennsylvania Synod of the Lutheran Church in America

1. Although the Sanner and Hauger Cemetery Association did not appeal from the order, the individual members of the association did join in the appeal.

(Synod); and the Lutheran Church in America (LCA). The basis for the claim was the alleged negligent maintenance of the cemetery. The claim against the Synod and the LCA was founded upon a contention that they had acquired a right to own, possess, and control the cemetery property upon the closing of St. John's Church in 1971 by virtue of language in their respective constitutions. The trial court determined as a matter of law, however, that St. John's had not "closed" but had merged with St. Luke's and that neither the Synod nor the LCA had any ownership interest in the cemetery property.

The LCA is a nationwide hierarchical religious denomination incorporated under the laws of Minnesota. It is divided into thirty-three (33) synods, each of which is a separate, nonprofit corporation having its own constitution and bylaws. The LCA grants each synod wide discretionary powers and some specific duties which include the care of member congregations. Each member congregation is a separate entity which also has its own constitution and bylaws. Affiliation with the LCA is voluntary, but membership requires a congregation to abide by the direction of the synod and the LCA. Under the LCA constitution, member congregations retain authority to control and maintain their own property. "The governance of the LCA and its synods and the member congregations is provided in the constitution or bylaws of the LCA, the several synods and the local congregations." *Roth v. May*, 98 Pa.Commw. 104, 106, 510 A.2d 908, 909 (1986).

St. John's and St. Luke's are member congregations of the Central Pennsylvania Synod of the LCA. The record shows that St. John's owned, possessed and maintained the land on which the cemetery is situated in Black Township, Somerset County, Pennsylvania, since approximately 1906. At a meeting of St. John's church council on April 19, 1949, trustees of a cemetery association were appointed for the purpose of caring for and maintaining the cemetery. The cemetery association was incorporated in 1959 as the "Sanner and Hauger Cemetery Association."

Services and other church functions were held at St. John's until 1971, when a majority of the congregation voted to merge with the neighboring congregation of St. Luke's. Upon merger of the two congregations, the assets of St. John's were transferred to the new church, which became known as St. Luke's. The church building previously occupied by the congregation at St. John's was dismantled and sold. Proceeds from the sale were used to purchase a marker located in the cemetery which reads "In Memory of St. John's Lutheran Evangelical Church, 1845—1971." In 1981, the Cemetery Association filed an affidavit of possession and a claim of adverse possession to the cemetery. No order has been entered on this claim. It was in 1984 that Rebecca Kelly, while playing in the cemetery, sustained an injury which resulted in the current action. The subject of our review is the ownership of the cemetery.

Summary judgment may properly be entered only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). The moving party has the burden of persuading the court that no genuine issues exist as to the material facts. Summary judgment may be entered only where the case is free from doubt. *Hower v. Whitmak Associates*, 371 Pa.Super. 443, 445, 538 A.2d 524, 525, *allocatur denied*, 522 Pa. 584, 559 A.2d 527 (1988). In passing upon a motion for summary judgment, moreover, a court must examine the record in the light most favorable to the non-moving party. Any doubt must be resolved against the moving party. *French v. United Parcel Service*, 377 Pa.Super. 366, 371, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super 135, 140–141, 476 A.2d 928, 930 (1984); *Chorba v. Davlisa Enterprises, Inc.*, 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982). *Laventhol & Horwath v. Dependable Ins. Associates Inc.*, 396 Pa.Super. 553, 558, 579 A.2d 388, 390 (1990). See also:

*Cobaugh v. Klick–Lewis, Inc.,* 385 Pa.Super. 587, 561 A.2d
1248 (1989). To succeed on their motions for summary
judgment in this case, the Synod and LCA were required to
show that there was no dispute as to the facts and that they
were entitled to judgments as a matter of law. See: *La-
venthol & Horwath v. Dependable Ins. Associates Inc.,*
*supra,* 396 Pa.Superior Ct. at 554, 579 A.2d at 388; *Ama-
bile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 245, 376
A.2d 247, 249 (1977).

In order to predicate liability against the Synod
and the LCA, evidence was necessary to show that these
two hierarchical church entities had the right to control the
manner in which cemetery property was maintained. This
required evidence of "either (1) an actual transfer of proper-
ty from the congregation to the hierarchical church body or
(2) clear and unambiguous documentary evidence or conduct
on the part of the congregation evincing an intent to create
a trust in favor of the hierarchical church body." *Orthodox
Church of America v. Pavuk,* 114 Pa.Commw. 176, 181, 538
A.2d 632, 634 (1988), *allocatur denied,* 519 Pa. 669, 548
A.2d 258 (1988). See also: *Mikilak v. Orthodox Church in
America,* 99 Pa.Commw. 264, 513 A.2d 541 (1986), *alloca-
tur denied,* 515 Pa. 602, 528 A.2d 958 (1987). The claim
against LCA and the Synod is based upon the contention
that St. John's closed its doors and that its assets thereupon
passed to the Synod and the LCA. It is based upon the
general rule of law that a congregation belonging to a
hierarchical membership cannot sever itself from the parent
body without forfeiting its assets. See: *Western Pennsyl-
vania Conference of the United Methodist Church v. Ever-
son Evangelical Church,* 454 Pa. 434, 312 A.2d 35 (1973).
However, this rule of law is not without exceptions. Thus,
the local congregation and the parent church body may
agree that the local church property is to remain subject to
ownership and control by the local congregation. The gen-
eral rule has no application, moreover, where two congrega-
tions of the same hierarchical body join by merger. In
cases of merger, title to congregational assets passes to the
surviving corporation. In the instant case, it is clear that

St. John's did not forfeit title to its assets to the parent bodies. St. John's and St. Luke's were joined by merger into one congregation under the name and style of St. Luke's, and title to the assets of St. John's passed to the surviving congregation.

Appellants contend that the lower court erred when it concluded that St. John's had merged with St. Luke's. They contend that there is evidence sufficient to permit a jury determination that St. John's, in fact, had closed and ceased to exist. Therefore, they argue, title to the assets of St. John's, including the cemetery, passed to the Synod and the LCA. We reject this argument.

Article VI, § 8 of the Constitution of the LCA provides as follows:

A synod may declare a congregation within its jurisdiction defunct if such congregation has disbanded, or if it has ceased to maintain religious services according to the tenets and usages of the Lutheran Church, or if its membership has so diminished in numbers or financial strength as to render it impracticable for such congregation to fulfill the purposes for which it was organized, or to protect its property from waste and deterioration. In such case, or if a congregation departs from membership in this church without the consent of a convention of the synod, all property of the congregation, real, personal and mixed, shall vest in the synod, its successors or assigns.

The constitution for the Central Pennsylvania Synod and the Approved Constitution for the Congregations of the LCA contain substantially similar provisions.[2]

Article VI, § 11 of the LCA's Constitution provides:

2. Article Nine, section III, item 4 of the Central Pennsylvania Synod constitution provides:

Any congregation, belonging to the Synod, which has disbanded, or which in the opinion of the Executive Board has ceased or failed to maintain religious worship or services according to the tenets and usages of the Lutheran Church, or whose membership has so diminished in numbers or financial strength as to render it impossible or impracticable for such congregation to fulfill the purposes for which it was organized to protect its property from waste and

The executive body of the synod to which the affected congregation belongs shall be charged exclusively with the responsibility to make all determinations, whether of a secular, doctrinal or ecclesiastical nature, relevant to the administration of Sections 7 and 8 of this article, and its decision shall be final subject only to the right of appeal to a convention of the synod.

In this case, it is undisputed that neither the Synod nor the LCA ever exercised actual control over the cemetery property. There also has never been a determination by the Synod that either St. John's or St. Luke's was defunct. The LCA's Constitution enumerates circumstances which act as conditions precedent to any action taken by the Synod to declare a congregation defunct. The language thereof indicates that a Synod's declaration of dysfunction is a specific prerequisite to the vesting of any property rights in the Synod or the LCA. Cf. *Trinity Lutheran Evangelical Church v. May*, 112 Pa.Commw. 557, 537 A.2d 38 (1988) (declaration of dysfunction by synod is prerequisite to vesting of property rights in synod). Moreover, neither congregation has done anything which would necessitate discipline by the Synod or cause the Synod to assume control of its property. In the absence of such a condition precedent, which would lead to a declaration of dysfunction, property rights cannot vest in the Synod or the LCA.

deterioration, shall be deemed by the synod to be defunct, and the synod ... shall take charge and control of the property of said congregation to hold, manage and convey the same in behalf of the synod.

Article VI, § 8 of the Approved Constitution for the Congregations of the LCA provides:

If this congregation a) disbands, b) ceases or fails to maintain religious worship or services according to the tenets and usages of the Lutheran church, c) departs from membership in the Lutheran Church in America without the consent of the synod, or d) so decreases in numbers or financial strength as to render it impracticable for the congregation to fulfill the purposes for which it was organized or to protect its assets from waste and deterioration, the synod to which the (name of congregation) belongs shall have the right to take charge and control of all property of the congregation and thereafter to hold, manage and convey the same at the discretion of the synod.

The record is clear that the merger of the congregations of St. John's and St. Luke's took place in 1971 after a merger had been voted upon favorably by both congregations and approved by the Synod. It is recorded in records of the Synod as a merger of congregations. The fact of merger established by the documents forming a part of the hierarchical records is not altered by deposition testimony by a pastor of St. Luke's and several officers of the cemetery association who referred to a "closing" of St. John's in 1971. Although St. John's closed its doors and discontinued services in 1971, it did so because its members had joined by merger with St. Luke's. Under these circumstances, the title to its assets, as well as the duty of maintaining them, passed to St. Luke's and not to the Synod or LCA.

Because St. John's did not sever its relationship with the Synod or LCA, but merged with another Lutheran Church of the same synod, its assets were not forfeited to a parent body but passed to the surviving congregation by merger. It is the surviving body which controlled those assets on the date of the minor plaintiff's unfortunate accident and to which claimants must look for damages in the event negligent maintenance of the cemetery is found to be related causally to such injuries.[3]

The summary judgment entered in favor of the Lutheran Church in America and the Central Pennsylvania Synod of the Lutheran Church in America is affirmed.

---

**3.** It is not necessary to our decision to determine whether the cemetery association is an independent body or remains subject to control by St. Luke's, the surviving church congregation. In either event, the right to control the manner in which the cemetery is maintained has not been vested in the Synod or LCA.