## Manning v. Barber's Chemicals Inc.

C.P. of Mercer County, no. 1998-3164.

*Richard W. Moroco,* for plaintiff.
*William G. McConnell,* for defendant.

DOBSON, *J.,* December 21, 2000—The matter before this court for disposition is plaintiff Robert Manning's motion for partial summary judgment. For the reasons hereinafter set forth, this court grants Manning's motion.

Pa.R.C.P. 1035.2 provides that any party may move for summary judgment in whole or in part as a matter of law:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

A court may grant a motion for summary judgment only where the right is clear and free from doubt. *Ducjai v. Dennis,* 540 Pa. 103, 113, 656 A.2d 102, 107 (1995).

"The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be re-

solved against the moving party." *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991).

The nonmoving party "must adduce sufficient evidence on [all] issue[s] essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008 (1996).

Viewed in the light most favorable to the nonmoving party, the facts are summarized as follows: Manning entered into an employment contract along with a stock purchase agreement with Barber's Chemicals Inc. through its president Edward Earnhardt Jr. on January 1, 1997. These agreements were for a 10-year duration and during that time Manning, as an employee of Barber's, would purchase 6,800 shares of Barber's stock by Barber's allocating a portion of the profits made by the company to Manning's stock purchase agreement. Pursuant to the stock purchase agreement, Manning would be a 50 percent shareholder of Barber's by December 31, 2006. Paragraph three of the stock purchase agreement is the most relevant provision to this motion in that it asserts:

"This stock purchase is only for a period of 10 years beginning with the date set forth above and as long as Robert Manning is an employee of Barber's Chemicals

Inc. If Barber's Chemicals should cancel this agreement or terminate the employment of Robert Manning for any reason or without reason within the 10-year period, Robert Manning will get $72,000 plus the fair market value of his company's stock that had been purchased to date but only after having first subtracted $642,000 from the fair market value before determining Robert Manning's proportionate share. Fair market value shall be determined as set forth in paragraph 15."

On March 30, 1998, Earnhardt informed Manning that Barber's was terminating the stock purchase agreement and canceling Manning's employment contract. Earnhardt confirmed this termination in writing by letter to Manning dated March 31, 1998. Barber's did not pay Manning the $72,000 that Manning asserts he is entitled to pursuant to the terms and conditions of the stock purchase agreement. On August 3, 1999, Manning filed his amended complaint alleging three counts against Barber's. It is Count-I, breach of stock purchase agreement, for which Manning brings this motion for partial summary judgment. Manning supports his argument for partial summary judgment by asserting: (1) Barber's has failed to proffer sufficient evidence which would permit a jury to find that Manning fraudulently misrepresented a material fact which induced Barber's to enter into the stock purchase agreement; and (2) the record does not contain evidence of facts essential to support Barber's fraudulent inducement defense to the enforcement of the stock purchase agreement.

Barber's has asserted in its defense that Manning fraudulently induced Barber's to execute the stock purchase agreement and therefore the agreement is void. During the negotiation of the employment contract and the stock purchase agreement, Manning made several assertions regarding his ability to increase the sales and profits of Barber's. Specifically, Manning asserted that he would be able to increase the sales of the company to the extent that the revenues would be sufficient to cover both his additional wage with substantial enough profits to enable him to purchase a 50 percent interest in the business under the formula and over the period of time set forth in the stock purchase agreement. Earnhardt asserted in his affidavit that Barber's entering into the agreement was based upon Manning's representations that a large part of the sales and profits were to be forthcoming from opening up a market for the sale of polymers.

Barber's asserts that the stock purchase agreement was completely based upon Manning purchasing an interest in Barber's through the profits which Manning represented would be made. Barber's further asserts that these profits were to be derived from Manning taking over the operation of the business and a large extent of the additional monies was to be obtained through the sale of polymers. Barber's also contends that a precondition to the sale of the polymers was the expertise and cooperation of Ken Kuszmaul, and such was known by Manning at the time he made his representations as to the increase of sales and profits for Barber's, but such was

unknown to Barber's at the time of the representations. In response to Manning's motion for partial summary judgment, Barber's has alleged the defenses of: (1) failure of consideration; (2) estoppel; (3) fraudulent inducement of the stock purchase agreement; and (4) breach of the implied covenant of good faith and fair dealing.

Barber's has contended that it was induced to enter into the agreement based upon Manning's representations as to his ability to increase profits through the introduction of polymer industrial chemicals and the sale thereof, as well as his ability to institute more sophisticated business practices which would provide additional profits resulting in Manning's ability to purchase stock in Barber's, and that Manning would devote all of this working time to rendering services to and for the benefit of Barber's.

Barber's defense of failure of consideration is based upon its assertion that its consideration for entering into the stock purchase agreement was based upon Manning's management of Barber's creating profits to be used to purchase the company's stock. Barber's asserts that under Manning's management no profits were made, and in fact losses were sustained to the degree that the continuation of the business was jeopardized, therefore, there was no consideration.

Under Pennsylvania law, the requirement of consideration as an essential element of a contract is nothing more than a requirement that there be a bargained for exchange. *Cobaugh v. Klick-Lewis Inc.,* 385 Pa. Super.

587, 591, 561 A.2d 1248, 1250 (1989). Consideration confers a benefit upon the promisor or causes a detriment to the promisee. *Id.* In this case, Barber's claims that profitability was the sole consideration to support the stock purchase agreement and the failure to produce a profit as represented resulted in a failure of consideration. This court does not agree that the profitability of Barber's under Manning's management was the sole consideration for the stock purchase agreement. The stock purchase agreement was a simple bilateral contract with Manning providing services to Barber's while in return receiving the right to purchase stock in Barber's from the profits generated under his management. Barber's consideration was not the profitability, but rather Manning's services in exchange for the right to purchase stock. Although Barber's did not make a profit under Manning's management, it did have consideration for entering into the stock purchase agreement.

Barber's also alleges that there are sufficient facts, which if believed, would establish the defense of estoppel. Equitable estoppel is a doctrine of fundamental fairness designed to preclude a party from depriving another of reasonable expectation when the party inducing expectation, albeit gratuitously, knew or should have known that others would rely upon that conduct to his or her detriment. *Commonwealth ex rel. Gonzales v. Andreas,* 245 Pa. Super. 307, 311-12, 369 A.2d 416, 418 (1976). Barber's alleges that Manning's actions, specifically misrepresentations, bad faith and fraudulent inducement,

were designed to undermine and destroy Barber's business and therefore Manning is estopped from enforcing the provisions of the agreement.

Barber's defense of estoppel is based on Manning's representations during the negotiation of the stock purchase agreement. Manning asserted that under his management Barber's would increase its sales, a large part of which would be from the opening of a market for the sale of polymers, to the extent that the revenues would be sufficient to cover his salary with substantial enough profits to enable Manning to purchase a 50 percent interest in Barber's over the 10-year agreement. Barber's alleges that such representations were false, in bad faith, and fraudulently induced it into executing the stock purchase agreement. Although neither Barber's sales nor its profits increased under Manning's management, there is no evidence produced by Barber's, or contained in the record to prove, or from which one could reasonably infer, that Manning misrepresented any material statements, acted in bad faith, fraudulently induced Barber's to enter into the stock purchase agreement, or in any way attempted to undermine or destroy Barber's. Therefore, Barber's defense of estoppel is without merit.

Barber's next defense is that Manning fraudulently induced it to enter into the stock purchase agreement. Barber's asserts that Earnhardt would not have entered into an agreement to pay Manning $72,000 to manage his business if in fact it was not coexistent with an agreement to purchase the stock interest as represented by the

stock purchase agreement, and Earnhardt certainly would not have entered into either of these agreements if he did not accept the representations made by Manning as to his ability to make sufficient monies to justify both. It has been alleged that Manning, who was experienced in the chemical field, appraised and evaluated Barber's operations and made material statements about his future performance to induce the agreements. Barber's also claims that there is sufficient circumstantial evidence to establish that at the time of Manning's promises, Manning was affiliated with Kuszmaul and Manning's subsequent relationship with Kuszmaul are strong evidence to the fact that: Manning made misrepresentations, obtained employment, converted business to Kuszmaul, transmitted customer lists to Kuszmaul, and diverted profits to Kuszmaul. Barber's also claims that it will ultimately be for a jury to decide whether Manning's representations were fraudulent.

To prove fraud, a plaintiff must demonstrate: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gruenwald v. Advanced Computer Applications Inc.*, 730 A.2d 1004, 1014 (Pa. Super. 1999); *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (1999). Where a party is induced to enter into a transaction by means of fraud or

material misrepresentation, such a transaction can be avoided by the innocent party. *Greenwood v. Kodoich,* 239 Pa. Super. 372, 378, 357 A.2d 604, 607 (1976). A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have been entered into. *Id.* Whether fraud has been committed is a question of fact which is always a jury question, however, evidence of fraud must be clear and convincing and whether the evidence of fraud meets the required standard which justifies its submission to the jury is always a question of law for the court. *Id.* at 375-76, 357 A.2d at 606.

In this case, there is no evidence supporting a conclusion that Manning intentionally misrepresented any facts to Barber's. Although Manning made representations during the negotiation of the stock purchase agreement with regard to his ability to increase the sales and profits, as well as, open up a market in polymers, there is no evidence that Manning made any misrepresentation with knowledge that it was false. There is no evidence to prove that Manning knew that his representations would not come true, nor is there evidence that he made such representations to induce Barber's to enter into the stock purchase agreement. In fact under Manning's management, Barber's did enter into the polymer market but it was limited because Barber's did not have the technicians to do the testing to determine the correct product for the end customer. Manning was relying on Kuszmaul's assistance to perform the testing required to

market polymers, but after Manning became affiliated with Barber's he learned that Kuszmaul did not have enough people to devote to Barber's to assist it. Therefore, since Kuszmaul's assistance was not available, Barber's was unsuccessful in the marketing of polymers. There is also no evidence produced by Barber's, or contained in the record to prove, or from which one could reasonably infer, that Manning made misrepresentations to, or converted business or profits from Barber's to Kuszmaul during his time with Barber's.

Breach of a promise to do something in the future is not actionable in fraud. *Shoemaker v. Commonwealth Bank,* 700 A.2d 1003, 1006 (Pa. Super. 1997). Barber's bases its fraud claim on Manning's alleged promise to increase sales and profits on the company, a large portion of which were to be forthcoming from opening up a market for the sales of polymers, to enable him to purchase a 50 percent interest in the company over a 10-year period. Therefore, Manning was promising to do something in the future; thus, Manning's promise cannot form the basis of a cause of action in fraud. Barber's final argument in opposition to Manning's motion for partial summary judgment is that Manning breached the duty of good faith and fair dealing. Barber's asserts that Manning represented that he would increase the profitability of the business by opening up the polymer market. Barber's claims that these representations are fraudulent because Manning was unable to open a market in polymers without Kuszmaul's cooperation and there were

only two polymer accounts obtained while Manning was employed by Barber's.

Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement. *Donahue v. Federal Express Corp.*, 753 A.2d 238, 242 (Pa. Super. 2000). The duty of good faith has been defined as "honesty in fact in the conduct or transaction concerned." *Sensenig v. Spring Glen Farm Kitchen Inc.*, 16 D.& C.4th 394, 397 (1992). In this Commonwealth the duty of good faith has been recognized in limited situations, however, no court in Pennsylvania has found a separate cause of action for breach of the implied covenant of good faith where the employer and employee have entered into a valid employment agreement. *Id.* at 397-98.

Barber's argues that Manning breached the implied duty of good faith by failing to increase the profits of the business along with failing to open up the polymer market. If Manning had known that he would be unable to enter into the polymer market prior to entering into the agreement, or if he had discontinued his efforts to increase the profits of the business during his time at Barber's, Manning would have breached the implied duty of good faith. The record in this case indicates that Manning was not aware that he would be unable to use Kuszmaul's services as Barber's supplier to enter into the polymer market prior to entering into the agreement. During Manning's time at Barber's a couple of accounts for polymers were opened and Barber's employees pre-

pared a list of all of the companies or prospective accounts that use polymers. Barber's did not have the technicians to perform the testing on polymers to determine the correct product for the end customer, therefore it required Kuszmaul's cooperation.

Manning was relying on assistance from Kuszmaul to perform the technical services to determine the correct product for the end customer. It was not until after Manning began working for Barber's that he learned that he was not going to get Kuszmaul's assistance, and Manning was depending on Kuszmaul to sell the polymers. Although Manning was only successful on a couple of occasions, he continued to attempt to break into the polymer market throughout his time with Barber's. In fact, Barber's records indicate that Manning contacted Kuszmaul 114 times via telephone in an attempt to do business with polymers. Review of the record in this case does not produce sufficient evidence to warrant a finding that Manning was aware that he could not rely on Kuszmaul's assistance prior to entering into the agreement. The preparation of the list of potential polymer accounts, along with the number of telephone calls placed to Kuszmaul, indicate that Manning was continuously attempting to have Barber's break into the polymer market. Barber's has simply failed to introduce any evidence of record that would indicate that Manning breached his implied duty of good faith or fair dealing to Barber's.

Since Barber's has not introduced a genuine issue as to material fact, and the record does not support the alle-

gations that: (1) Barber's had no consideration in the agreement; (2) the defense of estoppel applied; (3) Manning fraudulently induced Barber's into entering into the stock purchase agreement; or (4) Manning breached the implied duty of good faith and fair dealing, the agreement must stand as valid. The stock purchase agreement indicates that if Barber's canceled that agrement for reason or without reason within the time period, Manning will get $72,000 ... Therefore, the stock purchase agreement is valid and Manning's motion for partial summary judgment is granted.

Hence this order:

## ORDER

And now, December 21, 2000, it is hereby ordered that plaintiff Robert Manning's motion for partial summary judgment is granted and judgment in the amount of $72,000 plus interest is entered in favor of the plaintiff and against the defendant, subject to any setoff, determined appropriate at trial.

It is further ordered that this judgment shall not be executed upon subject to final disposition of this case.